732 F.2d 803
 James David RAULERSON, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary, Florida Department of
Offender Rehabilitation, Richard Dugger, Superintendent of
Florida State Prison at Starke, Florida, and Jim Smith,
Attorney General of the State of Florida, Respondents-Appellees.
 No. 83-3541.
 United States Court of Appeals,
Eleventh Circuit.
 May 1, 1984.
 
 Stephen B. Bright, Atlanta, Ga., for petitioner-appellant.
 David P. Gauldin, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before FAY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 ALBERT J. HENDERSON, Circuit Judge:
 
 
 1
 This is an appeal from the denial of the petition of the appellant, James Davis Raulerson, for a writ of habeas corpus in the United States District Court for the Middle District of Florida. On April 27, 1975, Raulerson and his accomplice, Jerry Leon Tant, robbed the Sailmaker Restaurant in Jacksonville, Florida. During the course of the robbery, Raulerson forced a female employee into a back room and raped her. In the meantime, two police officers, James English and Michael Stewart, were dispatched to the scene. Upon their arrival, a gun battle ensued during which Tant and Officer Stewart were killed. The evidence disclosed that the bullets that killed Officer Stewart came from Raulerson's gun.
 
 
 2
 In August of 1975 Raulerson was convicted of first degree murder and sentenced to death. The conviction and sentence were affirmed on appeal. See Raulerson v. State, 358 So.2d 826 (Fla.), cert. denied, 439 U.S. 959, 99 S.Ct. 364, 58 L.Ed.2d 352 (1978). Subsequently, he filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Florida. That court found that Raulerson had been denied the opportunity to rebut the contents of his presentence report in violation of Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), and ordered a new sentencing hearing. See Raulerson v. Wainwright, 508 F.Supp. 381, 383-85 (M.D.Fla.1980).[1] Raulerson was again sentenced to death. The Florida Supreme Court consolidated the appeals from the denial of post conviction relief and reimposition of the death penalty and affirmed both judgments. See Raulerson v. State, 420 So.2d 567 (Fla.1982), cert. denied, --- U.S. ----, 103 S.Ct. 3572, 77 L.Ed.2d 1412 (1983).
 
 
 3
 The state set Raulerson's execution for September 7, 1983. On August 22, 1983, he filed a second petition for post conviction relief in the Circuit Court of Duval County under Rule 3.850 of the Florida Rules of Criminal Procedure. The circuit court denied both the petition and a motion for a stay of execution. The Florida Supreme Court again affirmed. See Raulerson v. State, 437 So.2d 1105 (Fla.1983).
 
 
 4
 On September 2, 1983, Raulerson filed this habeas corpus petition in the United States District Court for the Middle District of Florida. The court held an evidentiary hearing on September 6, 1983, and granted a temporary stay of execution. Ultimately, the district court denied the writ and lifted the stay but granted a certificate of probable cause to appeal.
 
 
 5
 In this appeal, Raulerson urges five grounds of error: (1) the state trial court's failure to consider nonstatutory mitigating evidence; (2) the denial of his right to represent himself at trial; (3) the denial of effective assistance of counsel during several stages of the proceedings; (4) the trial court's refusal to grant a continuance to enable him to gather favorable evidence for his sentencing hearing; and (5) the district court's expeditious resolution of his habeas corpus petition. After careful examination of these assignments of error, we find them to be without merit. Accordingly, we affirm the denial of Raulerson's petition for a writ of habeas corpus.
 
 I. Nonstatutory Mitigating Evidence
 
 6
 During the second sentencing hearing, Raulerson called a host of witnesses who testified to his troubled childhood, excellent work record, devotion to family, religious beliefs and prospects for rehabilitation. In pronouncing sentence, the court stated that it found five aggravating circumstances but no mitigating ones, statutory or otherwise. It is this statement that gave rise to Raulerson's first contention that the trial court failed to consider his evidence of mitigating circumstances. Contrary to Raulerson's assertion, it is evident from the record before us that the trial judge did consider the evidence but concluded that it did not outweigh the factors militating in favor of the death penalty. The real thrust of his argument seems to be that the court committed error of constitutional magnitude by not accepting the evidence as mitigating.
 
 
 7
 It is clear from recent decisions of the Supreme Court that a prerequisite to constitutional imposition of the death penalty is consideration by the sentencer of the individual circumstances of the crime, that is, "the character and record of the individual offender and the circumstances of the particular offense...." Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944, 961 (1976). See also Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). This obviously means that the totality of circumstances must be reviewed including both statutory and nonstatutory mitigating factors. See Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
 
 
 8
 In Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) the Supreme Court struck down a North Carolina statute that required imposition of the death penalty for first degree murder. The Court reasoned that such mandatory sentencing statutes obviate the necessity for the sentencer to exercise discretion in contravention of the principle that "justice ... requires consideration of ... the circumstances of the offense together with the character and propensities of the offender." Id. at 304, 96 S.Ct. at 2991, 49 L.Ed.2d at 961 (quoting Pennsylvania ex rel. Sullivan v. Ashe, 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43, 46 (1937)).
 
 
 9
 This requirement of giving full consideration to mitigating factors in addition to the nature and circumstances of the crime was given increased vitality in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In Lockett, the Supreme Court struck down the Ohio death penalty statute because it failed to allow consideration of such factors as age and familial history in mitigation. Under the Ohio statute, personal background evidence was admissible only if it substantiated the existence of any of the state's three statutorily enumerated mitigating circumstances.[2] The Supreme Court invalidated the statute as violative of the eighth and fourteenth amendments, holding that the sentencer must "not be precluded from considering ... any aspect of a defendant's character or record" proffered in mitigation of his offense. Id. at 604, 98 S.Ct. at 2964-65, 57 L.Ed.2d at 990. Thus, Lockett instructs that the sentencing body be free to consider the impact of the defendant's background in making its decision. To say, however, as Raulerson maintains, that Lockett imposes a duty on the sentencer to regard such evidence as mitigating is quite another matter. That such an interpretation would be an overbroad reading of Lockett is apparent from the Supreme Court's subsequent decision in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
 
 
 10
 In Eddings, the Supreme Court overturned a death penalty because the trial court refused to consider Eddings' troubled past in mitigation of his sentence. In reaching its decision, the Court concluded that it was "clear that the trial judge did not evaluate the evidence in mitigation and find it wanting as a matter of fact, rather he found that as a matter of law he was unable even to consider the evidence." Id. at 113, 102 S.Ct. at 875, 71 L.Ed.2d at 10 (emphasis original). The trial judge's self-imposed restrictions on the scope of the evidence that he would consider in mitigation violated both state statutory law and federal judicial precedent. As the Court stated, "the Oklahoma death penalty statute permits the defendant to present evidence 'as to any mitigating circumstances.' Lockett requires the sentencer to listen." Id. at 115, n. 10, 102 S.Ct. at 876 n. 10, 71 L.Ed.2d at 11 n. 10 (emphasis added) (citation omitted).
 
 
 11
 A careful examination of Eddings reveals that the Constitution prescribes only that the sentencer hear and consider all the evidence a defendant chooses to offer in mitigation. There is no requirement that the court agree with the defendant's view that it is mitigating, only that the proffer be given consideration.[3]
 
 
 12
 The reliance on mitigating evidence is a matter for the sentencing authority. Although the Supreme Court has indicated that in certain circumstances, background evidence not only must be considered but must be accorded significant weight,[4] the general rule is that as long as the evidence is evaluated, it properly may be given little weight or no weight at all. See Eddings v. Oklahoma, 455 U.S. at 114-15, 102 S.Ct. at 875-76, 71 L.Ed.2d at 11.
 
 
 13
 In this case, the trial court explicitly demonstrated that it had met its constitutional burden. It heard extensive evidence in mitigation and then made an explicit finding: "The Court has examined and considered the evidence to determine whether there are circumstances, other than those specified [in the Florida statute], which would mitigate the murder committed by the Defendant herein. The Court finds that there are no such non-statutory mitigating circumstances within the meaning of Lockett v. Ohio...."[5] There can be no clearer evidence that the trial court followed Lockett's dictates.
 
 
 14
 In summary, Lockett stands for the proposition that the sentencer must consider all mitigating evidence.[6] After so doing, it then is generally free to accord that evidence such weight in mitigation that it deems fit.
 
 II. The Right of Self-Representation
 
 15
 The sixth and fourteenth amendments guarantee state criminal defendants the right of self-representation at trial. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Since it is more likely than not that a defendant would fare better with the assistance of counsel, id. at 835, 95 S.Ct. at 2540, 45 L.Ed.2d at 581, he will be permitted to represent himself only when he "knowingly and intelligently" relinquishes his right to counsel. Id. at 835, 95 S.Ct. at 2540, 45 L.Ed.2d at 581. Such a knowing waiver must be made by a "clear and unequivocal" assertion of the right to self-representation. See Faretta, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. Once there is a clear assertion of that right, the court must conduct a hearing to ensure that the defendant is fully aware of the dangers and disadvantages of proceeding without counsel. See Hance v. Zant, 696 F.2d 940, 949 (11th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983).
 
 
 16
 In the present case, Raulerson requested that he be permitted to act as co-counsel with his attorney, David Busch, during a status hearing prior to the second sentencing hearing on July 15, 1980. The court denied the request. Subsequently, on July 18, 1980, Raulerson sent a letter to the judge requesting permission to appear pro se. The court did not immediately act on this second request. At the resentencing hearing on August 11-12, 1980, however, the court reversed its original position and granted Raulerson permission to act as co-counsel, relying on the Florida appeals court's decision in Tait v. State, 362 So.2d 292 (Fla.Dist.Ct.App.1978). During the course of the hearing, the Florida Supreme Court overruled Tait, thereby striking down such "hybrid" representation. See State v. Tait, 387 So.2d 338 (Fla.1980). The trial court then withdrew its earlier grant of permission to act as co-counsel.
 
 
 17
 After his removal as co-counsel, Raulerson did not immediately renew his request to appear pro se. Later, however, at a hearing on February 6, 1981, he made a request in open court to represent himself. At that point, the judge began a "Faretta" inquiry into Raulerson's understanding of the potential danger inherent in his action, but subsequently terminated the hearing when Raulerson abruptly walked out of the courtroom.
 
 
 18
 In light of these facts, we conclude that Raulerson failed to make an "unequivocal" assertion of his right to relinquish counsel until February 6, 1981. On that date, he did make known his desire to appear pro se but then waived it by voluntarily leaving the courtroom during the Faretta inquiry. Initially, Raulerson wrote a letter to the judge requesting to appear pro se but did not pursue the matter. Although a defendant need not "continually renew his request to represent himself even after it is conclusively denied by the trial judge," Brown v. Wainwright, 665 F.2d 607, 612 (5th Cir.1982), he must pursue the matter diligently.
 
 
 19
 The court took no immediate action upon receipt of Raulerson's letter. Thus, it did not conclusively deny the request at that time. When Raulerson subsequently requested and was granted the right to serve as co-counsel, he acquiesced without objection. Later, when this right was taken away, he failed, at that time, to notify the court of his desire to represent himself.
 
 
 20
 A defendant may waive his right of self-representation by electing to act as co-counsel. See Brown v. Wainwright, 665 F.2d 607, 611 (5th Cir.1982); Chapman v. United States, 553 F.2d 886, 893 n. 12 (5th Cir.1977). Even if Raulerson's letter of July 18, 1980 constituted a clear and unequivocal demand to represent himself, his agreement to proceed with the assistance of an attorney waived that original request until he reasserted it on February 6, 1981. At that time he made a valid assertion of his right and the court responded by initiating its required Faretta hearing. At this time he again waived his right to appear pro se when he voluntarily absented himself from the courtroom. His behavior on this occasion convinces us that he was not deprived of his constitutional right to appear pro se.
 
 III. Ineffective Assistance of Counsel
 
 21
 Raulerson claims that his counsel did not render effective assistance during his trial and both sentencing hearings. In reviewing this assignment of error, we do not reach the question of his attorney's effectiveness or ineffectiveness during the first sentencing hearing because the sentence resulting from that hearing is not under attack. The trial judge at the second sentencing hearing did not rely on the original jury's recommendation of death in making his assessment of the appropriate penalty at the second hearing.
 
 
 22
 The sixth amendment guarantees criminal defendants the assistance of counsel. A corollary has been added to this amendment by interpreting it to require "effective assistance of counsel, that is, counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances." Washington v. Strickland, 693 F.2d 1243, 1250 (5th Cir. Unit B 1982) (emphasis original), cert. granted, --- U.S. ----, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). Even if counsel was ineffective, the petitioner must show actual prejudice to the conduct of his defense before he would be entitled to relief. Id. at 1258.
 
 
 23
 Raulerson originally was represented by Walter Stedeford, a trial attorney with approximately twelve years of experience including a substantial amount of criminal work. Raulerson criticizes numerous aspects of Stedeford's performance, including a failure to make an extensive pretrial investigation, failure to interview all the state's witnesses, failure to file for a change of venue because of prejudicial publicity and a generally perfunctory trial demeanor culminating in a weak and ineffectual closing argument. These allegations do not accurately reflect the true nature of Stedeford's representation.
 
 
 24
 In reality, Stedeford had no need to research and prepare extensively prior to trial since he recently had finished another trial with similar issues. Although Stedeford may have interviewed only ten of the one hundred witnesses on the prosecution's list, those ten comprised two-thirds of the State's fifteen witnesses who testified at the trial. Moreover, several of those fifteen were merely chain-of-custody witnesses. Although he filed no motion, Stedeford did explore the possibility of seeking a change in venue, but after the voir dire examination, he determined that such action would be fruitless. In summary, Stedeford's representation appears more than adequate.
 
 
 25
 It is important to note that Washington v. Strickland mandates that the effectiveness of counsel be judged in light of "the totality of the circumstances." 698 F.2d at 1250. In this case, there was little doubt as to culpability as there were eye witnesses to the crime. Additionally, Raulerson was shot by a bullet from one of the policemen's guns, and he surrendered to the police at the scene of the crime. In these circumstances, Stedeford was relegated to putting the state to its proof and trying to catch the prosecution in error. Although Stedeford's pursuit of Raulerson's defense perhaps was not overly animated, it was probably as well conducted as one might hope, given the nature of Raulerson's case and the overwhelming evidence against him.
 
 
 26
 At the resentencing phase, Raulerson was represented by David Busch, the state public defender who had represented him for the five years preceding the hearing. Raulerson complains that Busch lacked sufficient time for preparation, he was not familiar with the witnesses and he failed to make a closing argument. After reviewing each of these claims, we find no error.
 
 
 27
 Busch testified to the district court that he had been wholly unprepared to represent Raulerson at his second sentencing because of the expediency of the resentencing hearing. He had expected the State to appeal its adverse decision in the district court and was surprised when it simply acquiesced in the resentencing order. Nevertheless, the record is clear that at the very latest, Busch knew by July 15, 1980 that he would be representing Raulerson at his resentencing on August 11, 1980. This gave him twenty-six days in which to prepare. This time span should have been sufficient in light of Busch's representation of Raulerson for the past five years.
 
 
 28
 Although supposedly unprepared for the hearing, Busch called six witnesses who testified on Raulerson's behalf. Busch claimed that, given more time, he could have produced additional witnesses and become more familiar with the ones who did testify. There was no showing, however, that any additional testimony would have been anything but cumulative in nature or that other favorable testimony could have been adduced from the witnesses who were present. Thus, even if Busch was unprepared as he testified, no prejudicial effect to Raulerson resulted therefrom.
 
 
 29
 Similarly, Raulerson suffered no prejudice from Busch's failure to make a closing argument. At the close of the evidence at the second hearing, Busch said that he was too exhausted to present a final argument. He moved for, but was denied a continuance until the following day. However, because the new sentencing hearing was held by the court and not before a jury, the judge agreed to consider as final argument an exhaustive, eighty-seven page memorandum previously filed by Busch. The failure to make an oral closing argument under these circumstances does not rise to the level of ineffective assistance of counsel.
 
 
 30
 In summary, although Busch's performance may not have measured up to his expectations of perfection, it was constitutionally adequate, taking into consideration the potentially mitigating evidence that he did present on Raulerson's behalf. Moreover, even if Busch's performance had been constitutionally defective, Raulerson has failed to demonstrate that any of the alleged errors caused him the "actual and substantial disadvantage" required to obtain habeas corpus relief. Washington v. Strickland, 693 F.2d at 1258. Cf. King v. Strickland, 714 F.2d 1481 (11th Cir.1983) (lack of preparation manifested by almost total failure to present mitigating evidence and borderline adverse closing argument held ineffective assistance). Therefore, Raulerson was not denied effective assistance of counsel at any relevant phase of the judicial process.
 
 IV. Failure to Grant Continuance
 
 31
 Having first challenged his second sentencing hearing on the basis of ineffective counsel, Raulerson now alleges that the proceeding was replete with judicial error as well. He contends that the state court erred in not granting continuances so that Busch could bring in new witnesses, conduct further interviews with those who were present and prepare a closing argument.
 
 
 32
 The decision whether to grant a continuance is a matter left up to the discretion of the trial judge. See United States v. Russell, 717 F.2d 518 (11th Cir.1983). While the constitutional right to compulsory process under the sixth amendment is well established, not every denial of a continuance infringes this right. See Dickerson v. Alabama, 667 F.2d 1364 (11th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). To warrant habeas corpus relief, the petitioner must show not only that the district court abused its discretion but that the abuse was "so arbitrary and fundamentally unfair that it violates constitutional principles of due process." Hicks v. Wainwright, 633 F.2d 1146, 1148 (5th Cir. Unit B 1981).[7] There is little doubt that no abuse of discretion, let alone such that would offend constitutional principles, occurred in this case.
 
 
 33
 In ascertaining the propriety of the denial of a continuance, consideration must be given to factors such as diligence in obtaining witnesses, the length of time needed for their procurement, the favorable tenor of their testimony and the "unique or cumulative nature of the testimony." Id. at 1149, quoting United States v. Uptain, 531 F.2d 1281, 1287 (5th Cir.1976). The record is clear that counsel was diligent in attempting to find witnesses who would have testified favorably. Consequently, only the last factor concerns us in this case.
 
 
 34
 As we concluded earlier in dealing with the effectiveness of Busch's representation at the second sentencing hearing, there is no support in the record for the assertion that other witnesses would have been available to give additional favorable mitigating evidence if only the sentencing court had granted a continuance. Cf. Dickerson v. Alabama, 667 F.2d 1364 (11th Cir.) (error to refuse continuance when necessary to procure credible alibi witness), cert. denied, --- U.S. ----, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982); Hicks v. Wainwright, 633 F.2d 1146 (5th Cir. Unit B 1981) (denial of continuance when needed to procure sole witness in support of only line of defense held error); Gandy v. Alabama, 569 F.2d 1318 (5th Cir.1978) (where lead counsel absented himself from trial and associate counsel was wholly unprepared to conduct defense, failure to grant continuance was error). Here, there is no evidence of the existence of such witnesses, except those whose testimony would have been repetitive. Also, Raulerson has not shown that the testimony of the witnesses who did testify would have been enhanced had only Busch had more time to interview them. Finally, there was no error of constitutional magnitude in the refusal to postpone the final arguments until the following day in light of the court's promise to consider the written memorandum for that purpose. Therefore, Raulerson has failed to show that the state trial court abused its discretion by refusing to grant a continuance.
 
 
 35
 V. Failure to Permit Sufficient Time to Prepare for District Court Hearing.
 
 
 36
 On August 5, 1983, the Governor of Florida signed Raulerson's death warrant, directing that his sentence be carried out during the week of September 2, 1983. The state chose September 7, 1983 as the execution date. Raulerson's current counsel undertook his representation on August 22, 1983 by filing a motion for post conviction relief in the state court. Fla.R.Crim.P. 3.850. The motion was denied and the Florida Supreme Court affirmed the decision on September 1, 1983. Having exhausted his state remedies, Raulerson then filed this petition in the district court on Friday, September 2, 1983. Because of the holiday weekend,[8] the court set the case for an evidentiary hearing on Tuesday, September 6, 1983. After the hearing, the court granted a forty-eight hour stay of execution, thereby extending the date to Friday, September 9, 1983.
 
 
 37
 On September 8, 1983 the district court entered its order denying the writ, an application for a stay of execution and additional briefing time. The court did grant a certificate of probable cause to appeal. In order to evaluate fully the merits of Raulerson's claims, this court granted a requested stay of execution.
 
 
 38
 Raulerson does not complain of the lack of an evidentiary hearing in the district court but rather he claims that his counsel had insufficient time for the background research necessary to adequately develop the facts at the hearing.
 
 
 39
 The district court is required to grant an evidentiary hearing where the facts were not sufficiently developed in the state court. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The courts of appeal are bound to stay a pending execution if there is not sufficient time to "consider properly the merits of the issues raised" in the habeas corpus petition. Dobbert v. Strickland, 670 F.2d 938 (11th Cir.1982).
 
 
 40
 The Dobbert mandate applies equally to the district courts. In this case, however, there is no indication that the court did not allow enough time for adequate development of the merits of the case. In his petition to the district court, Raulerson's counsel made only the boldfaced assertion that they would be able to support their allegations further if they were allotted additional time.[9] They made no proffer as to what they might have been able to prove had they had more time to prepare.[10] Moreover, they still are unable to proffer any convincing evidence to this court to indicate that the hearing in the district court was deficient.
 
 
 41
 In habeas corpus actions, the petitioner bears the burden of demonstrating facts sufficient to warrant an evidentiary hearing, see Jones v. Estelle, 632 F.2d 490, 492 (5th Cir.1980), cert. denied, 451 U.S. 916, 101 S.Ct. 1992, 68 L.Ed.2d 307 (1981), or, as here, additional time for a hearing. "[T]his court will not 'blindly accept speculative and inconcrete claims' as the basis upon which a hearing will be ordered," or additional time be granted. Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir.1982) (quoting Baldwin v. Blackburn, 653 F.2d 942, 947 (5th Cir. Unit A 1981), cert. denied, 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982). Raulerson failed to produce evidence of sufficient merit that would warrant the grant of additional time.
 
 
 42
 The judgment of the district court denying the writ of habeas corpus is AFFIRMED.
 
 
 43
 TUTTLE, Senior Circuit Judge, concurring in part and dissenting in part:
 
 
 44
 With deference, I concur in part and dissent in part. I concur in the opinion of the majority with respect to all issues other than that dealing with Raulerson's request to represent himself at the resentencing hearing. As to that issue I dissent. My disagreement with the Court is with the conclusion "that Raulerson failed to make an 'unequivocal' assertion of his right to relinquish counsel until February 6, 1981", and with the Court's treatment of his failure to reassert his demand to represent himself.
 
 
 45
 At a status hearing on July 15, 1980, Raulerson requested to appear as co-counsel in his case. This motion was denied by the trial court.[1] Thereafter, Raulerson sent a letter, dated July 18, 1980 to the trial judge. In that letter, Raulerson expressed dissatisfaction with his attorney and formally moved to appear pro se, even going so far as to cite Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Thereupon, under the Supreme Court's holding in Faretta, and as pointed out by this Court in Hance v. Zant, 696 F.2d 940, 949 (11th Cir., 1983), the trial court was obliged to conduct a Faretta -type hearing in order to make plain to Raulerson the dangers and possible adverse results if he acted as counsel for himself. Instead, however, of doing that he permitted Raulerson to act as co-counsel, relying on a Florida appeals court's decision in Tait v. State, 362 So.2d 292 (Fla.D.C.A.1978). Immediately thereafter, the trial judge learned that the Florida Supreme Court had overruled the district court of appeals in the Tait case. State v. Tait, 387 So.2d 338 (Fla.1980). The trial court then withdrew its earlier grant of permission for Raulerson to act as co-counsel and proceeded to a judgment sentencing him to death. At a subsequent hearing on February 6, 1981 dealing with an appeal from this sentence, Raulerson again demanded the right to represent himself, whereupon the trial judge commenced his Faretta -type hearing. The trial judge conducted such a hearing until Raulerson left the courtroom. This hearing, as noted, was entirely collateral to the present case, because the trial judge had already sentenced Raulerson to the death penalty on August 12.
 
 
 46
 Instead of conducting the Faretta -type hearing the record discloses the following scenario: first Raulerson asked for the right to appear as co-counsel, possibly thinking that this was the maximum he could expect from the trial judge; he then made a formal demand for the right to represent himself pro se, which should have resulted in an immediate hearing by the trial court; then, he was favored by the action of the trial court in permitting him to act as co-counsel, but then within a few hours he faced a reversal of the judge's position and was denied that right; then, some six months later in an unrelated hearing he made a further motion to represent himself. Thereupon, the trial court proceeded to hold the Faretta -type inquiry. It is not, it seems to me, reasonable for us to assume that when Raulerson at this late date, after the conclusion of the resentencing proceeding on August 11 and 12 in defiance of his established right, then asked to represent himself, this would be his first "unequivocal" assertion of his right. If we were to make any assumption, I think it would be that by this time Raulerson would be so utterly confused that he might be expected to walk out on that proceeding.
 
 
 47
 Unless we can assume that Raulerson would have acted the same way if the trial court, in response to his first demand, had undertaken in a proper manner to acquaint him with the problems he faced, then it seems to me that the trial court's failure to hold such a hearing could not be deemed as being ratified because six months after the sentencing hearing, he acted in the manner in which he did.
 
 
 48
 I would conclude that the failure of the trial court to respond affirmatively to his demand for the right to represent himself as required in Faretta was an absolute and final denial of that right which was not waived by his subsequent conduct. It seems to me a little naive for us to affirm the trial court's finding that Raulerson's "vacillation" amounted to waiver. Whatever vacillation appears in the record as it now stands was, it seems to me, the fault of the trial judge, whose vacillation could hardly be expected to have been treated by a non-lawyer defendant any differently than it was.
 
 
 49
 As to the second basis of my disagreement, I think the treatment by this Court of Raulerson's failure "to pursue the matter" of his demand to represent himself ignores the provisions of Rule 46 F.R.Civ.P. This rule states:
 
 
 50
 formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling of the court is made or sought, makes known to the court the action which he desires the court to take ... and his grounds therefor; ....
 
 
 51
 The effect of the Court's decision here is that when the trial court denied his request, Raulerson was obliged to renew his demand. This is nothing more or less, it seems to me, than requiring him to make an "exception" to the court's ruling.
 
 
 52
 I would remand for a further sentencing hearing.
 
 
 
 [1]
 While awaiting the decision of the district court, Raulerson filed a motion to vacate judgment and sentence in the Circuit Court of Duval County, Florida pursuant to Florida Rule of Criminal Procedure 3.850. The court denied his motion
 
 
 [2]
 At the time of Lockett's trial, imposition of the death penalty for aggravated murder was mandatory unless, upon consideration of "the nature and circumstances of the offense and the history, character and condition of the offender," the sentencer could find one of the following mitigating circumstances applicable:
 (1) The victim of the offense induced or facilitated it.
 (2) It is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation.
 (3) The offense was primarily the product of the offender's psychosis or mental deficiency, though such condition is insufficient to establish the defense of insanity.
 Ohio Rev.Code Ann. Sec. 2929.04(B) (1975).
 
 
 [3]
 Our conclusion on this point is reinforced by this circuit's recent decision in Dobbert v. Strickland, 718 F.2d 1518 (11th Cir.1983). There the court faced a similar challenge that the district court had failed both to consider non-statutory evidence and to find it mitigating. In rejecting this argument, the court stated:
 The fact that the sentencing order does not refer to the specific types of non-statutory "mitigating" evidence petitioner introduced indicates only the trial court's finding the evidence was not mitigating, not that such evidence was not considered. Whether particular evidence, such as the fact that Dobbert had a difficult childhood, is mitigating depends on the evidence in the case as a whole and the views of the sentencing and reviewing judges. What one person may view as mitigating, another may not. Merely because the Florida courts, operating through a properly drawn statute with appropriate standards to guide discretion, do not share petitioner's view of the evidence reveals no constitutional infirmity.
 Id. at 1524. Therefore, as long as the proffered evidence is considered fairly, the Supreme Court's mandate in Eddings generally is satisfied. But see infra note 4.
 
 
 [4]
 In Eddings, the Supreme Court intimated that where the murder was committed by a child or adolescent, a turbulent familial history might be deemed to be a mitigating circumstance as a matter of law. The Eddings Court's implication is not relevant here, since Eddings was only 16 years old while Raulerson was 23 at the time of the crime
 
 
 [5]
 The presence of mitigating circumstances is important in this case. On direct appeal, the Florida Supreme Court concluded that one of the five aggravating circumstances--that the murder was heinous, atrocious and cruel, Fla.Stat.Ann. Sec. 921.141(5)(h)--was applied erroneously. Raulerson v. State, 420 So.2d 567, 571 (Fla.1982). Under Florida law, where an improper aggravating circumstance is considered and there are mitigating circumstances, the cause must be remanded for resentencing. See Sireci v. State, 399 So.2d 964 (Fla.1981); Elledge v. State, 346 So.2d 998 (Fla.1977). Therefore, had the trial court found any mitigating circumstances, Raulerson would have been entitled to a new sentencing hearing
 
 
 [6]
 Although Lockett and its progeny emphasize that the court must consider virtually any mitigating evidence that the defendant proffers, we note that the court does retain some discretion over the process. The Court specifically stated that "[n]othing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." Lockett v. Ohio, 438 U.S. at 604 n. 12, 98 S.Ct. at 2965 n. 12, 57 L.Ed.2d at 990 n. 12. See, e.g., Shriner v. Wainwright, 715 F.2d 1452 (11th Cir.1983) (evidence concerning the general propriety of electrocution as a method of execution held properly excludable as irrelevant)
 
 
 [7]
 In Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit
 
 
 [8]
 Monday, September 5, 1983 was Labor Day. Therefore, the district court scheduled Raulerson's evidentiary hearing for the first business day after receipt of the petition
 
 
 [9]
 Raulerson's petition for habeas corpus relief reads in pertinent part as follows:
 The affidavits are submitted to show the prima facie merit to petitioner's claim of ineffective assistance of counsel. Petitioner anticipates offering additional evidence in support of his claims once present counsel has had an opportunity to further investigate the case. The affidavits submitted provide only a sketch of what the witnesses could state if presented as witnesses.
 Record at 31, n. 1.
 At the evidentiary hearing, counsel argued for additional discovery time:
 Our brief is preliminary in nature, and I believe that the evidence we offered here today is only preliminary in nature.... I would ... move this Court to grant a stay of execution and additional time as requested in the petition for a Writ of Habeas Corpus ... for the opportunity to develop and present further evidence before this Court, before any final order is entered....
 Transcript at 270.
 
 
 [10]
 In the district court, Raulerson's counsel made unsupported allegations regarding his ability to substantiate the claims of ineffective assistance of counsel if there were more time. To date, his attorneys have submitted only the affidavits of five people who would have testified for Raulerson at his resentencing had there been sufficient time and money. See record at 106-22
 Six people actually testified at the hearing. Raulerson's habeas corpus petition sums up their testimony as follows:
 (a) that petitioner had a difficult upbringing in that he was abandoned by his father, was placed in a home by his mother and later adopted by his grandparents;
 (b) that petitioner had an excellent work record over a six-year period in Carrollton, Ohio, where he worked in a restaurant;
 (c) that petitioner suffered a traumatic incident in his life when the man who took him in and became a father figure to him was shot in a domestic quarrel at the restaurant he ran with petitioner and died in petitioner's arms;
 (d) that petitioner struggled for a year to keep the restaurant in business after the murder of his stepfather, but it was closed because of back taxes owed;
 (e) that petitioner had an interest in his family and had gone to considerable efforts to locate his brothers and sisters who had been adopted by other families;
 (f) that petitioner had a wife and a small child;
 (g) that petitioner had an interest in religion;
 (h) that petitioner was a good prospect for rehabilitation.
 Record at 16-17.
 After a careful study of the petition and supporting affidavits introduced in the district court, and all the evidence before this court, we are convinced that any additional time would have been of little or no benefit. The affidavits of the purportedly crucial witnesses who were prevented from testifying by time constraints disclose no novel evidence but present only repetitive and cumulative testimony. See affidavits of David J. Busch, Phyllis Pilgrim, Joann Gunn, John S. Miller, Joseph B. Ingle, and Dean Yeager, record at 93-120.
 This court has previously pointed out that a petitioner's "suggestion that he could produce evidence at a subsequent hearing does not satisfy his burden" in stating a valid constitutional claim. Stephens v. Kemp, 721 F.2d 1300, 1303 n. 1 (11th Cir.1983). We reiterate that "wholly unsupported attacks on the competency and effectiveness of prior counsel will not be tolerated." Id. at 1304 n. 2. Raulerson's habeas corpus petition makes only unsubstantiated attacks on the competency of his prior counsel. No claim existed that would have justified the issuance of an indefinite stay or the grant of additional discovery time.
 
 
 [1]
 A defendant does not have a constitutional right to hybrid representation (self-representation with the assistance of counsel), although such representation remains as an option in the discretion of the trial court. United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir.1981); United States v. Daniels, 572 F.2d 535, 540 (5th Cir.1978)