[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12983
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cv-00287-WFJ-TGW

MICHAEL JOSEPH EDMONDSON,

Petitioner-Appellant,

versus

ATTORNEY GENERAL,
SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 23, 2021)

Before WILSON, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Michael Edmondson appeals the district court's denial of his 28 U.S.C. section 2254 petition.  He argues that the district court erred because the state

appellate court unreasonably applied <u>Faretta v. California</u>, 422 U.S. 806 (1975) to conclude that the state trial court did not violate his right to self-representation. We disagree and affirm the denial of Edmondson's habeas petition.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 2013, Edmondson was charged with a slew of offenses after he was caught burglarizing cars in a parking garage.[1] The state trial court found that Edmondson was indigent and appointed counsel to represent him.

At a pretrial hearing, Edmondson told the state trial court that he wanted to fire his attorney. The trial court held a hearing on Edmondson's request and heard from Edmondson and his appointed attorney. Edmondson wanted a new attorney, he explained, because the evidence had been "tampered with" but his attorney "[did] not care" and was not investigating his case. The state trial court ruled that Edmondson did not have a legitimate reason to discharge his appointed counsel. The state trial court told Edmondson that he could hire an attorney or choose to represent himself, although the latter option "would be a huge mistake, and we can go into that later if we need to." Edmondson replied that he did not have the funds to hire a private attorney. Edmondson did not request to be allowed to represent himself.

---

[1] Specifically, Edmondson was charged with burglary of an occupied structure, attempted carjacking, four counts of burglary of an unoccupied conveyance, resisting an officer with violence, battery on a law enforcement officer, and felony battery.

Instead, he said that "there is no way I'm going to be able to represent myself" because "[t]he Public Defender[']s Office has all my whole case."

Edmondson proceeded to trial. Before jury selection, Edmondson's counsel told the state trial court that Edmondson wanted to fire him. The state trial court questioned Edmondson to learn why.[2] Edmondson said that he previously tried to fire his attorney and still did not feel like his attorney was acting in his best interest. Edmondson insisted that "I will do it on my own if I have to." The state trial court asked "[d]o what on your own?" Edmondson clarified that he would "[g]o to trial." Edmondson reiterated that his attorney was refusing to help him and did not care that the police had tampered with the evidence. The state trial court ruled that it would not discharge Edmondson's attorney. Edmondson then asked, "So does that mean I'm stuck with him?" The state trial court explained that Edmondson was "not stuck with him" and said that his attorney had "been a lawyer a long time," had "tried many cases," and was "very competent." Edmondson did not say anything in response to this and his trial continued.

The jury ultimately convicted Edmondson of burglary of an occupied structure, attempted motor vehicle theft, four counts of burglary of a conveyance,

---

[2] The judge who presided over the trial was not the same judge who had heard Edmondson's complaints about his attorney at the pretrial hearing.

resisting an officer with violence, battery on a law enforcement officer, and misdemeanor battery.  He was sentenced to thirty years in prison.

Edmondson appealed his conviction to the state appellate court, arguing that the trial court erred by failing to conduct a Faretta inquiry.  The state appellate court affirmed his conviction in an unelaborated per curiam decision.

In 2018, Edmondson filed in the district court a section 2254 petition for a writ of habeas corpus.  Edmondson argued that the state trial court violated his Sixth and Fourteenth Amendment rights by not conducting a Faretta hearing after he said that he would "do it on [his] own if [he] ha[d] to" right before trial.[3]

The state opposed Edmondson's petition.  The state argued that Edmondson had not unequivocally requested to represent himself and had only sought substitute counsel.  Thus, the state argued, Edmondson could not show that the state appellate court's ruling was an unreasonable application of Faretta.

The district court denied Edmondson's habeas petition.  The district court explained that a Faretta hearing is necessary only where a defendant makes a "clear and unequivocal" request for self-representation.  Based on the state trial court record, the state appellate court could have found that Edmondson had not made an

---

[3] Edmondson also alleged that:  (1) the state trial court erred by not conducting a hearing pursuant to Nelson v. State, 274 So. 2d 256 (Fla. Dist. Ct. App. 1973); (2) the prosecutor failed to disclose favorable evidence and knowingly presented false evidence; and (3) his trial counsel was ineffective.  Edmondson did not seek a certificate of appealability as to these claims.

unequivocal request for self-representation, the district court concluded, and its decision was not an unreasonable application of <u>Faretta</u>.

Edmondson appealed and we granted his motion for a certificate of appealability on the <u>Faretta</u> issue: "[w]hether the district court erred by denying relief as to [Edmondson's] 28 U.S.C. [section] 2254 claim, pursuant to [<u>Faretta</u>]?"

**STANDARD OF REVIEW**

We review de novo a district court's denial of a section 2254 petition. <u>Smith v. Comm'r, Ala. Dep't of Corrs.</u>, 924 F.3d 1330, 1336 (11th Cir. 2019). A district court may not grant a section 2254 petition unless the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Our section 2254(d) review focuses on the "last reasoned" state court decision. See <u>McGahee v. Ala. Dep't of Corrs.</u>, 560 F.3d 1252, 1261 n.12 (11th Cir. 2009). The question is not whether we believe that decision was "incorrect" but whether the decision "was unreasonable—a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007). A decision is reasonable "so long as 'fairminded jurists could disagree' on the correctness of the . . . decision." <u>See Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). "[E]ven a strong

5

case for relief does not mean the state court's contrary conclusion was unreasonable." Id. To be entitled to relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

Where the last reasoned state court decision "is unaccompanied by an opinion explaining the reasons relief has been denied," we presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 98–99. "Our task in these situations is to review the record before the [state court] to 'determine what arguments or theories supported or, as here, could have supported, the state court's decision.'" Hittson v. GDCP Warden, 759 F.3d 1210, 1232 (11th Cir. 2014) (quoting Harrington, 562 U.S. at 102). Thus, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98.

## DISCUSSION

Edmondson argues that the district court erred in concluding that the state appellate court did not unreasonably apply Faretta. He made a clear and unequivocal request to represent himself, he maintains, when he told the state trial court that "I will do it on my own if I have to"—"it" being "[g]o[ing] to trial." Edmondson argues

6

that this statement, coupled with his desire to "fire" his attorney, was unambiguous and required a Faretta inquiry.

The law governing a Faretta claim is settled. A court is required "to conduct a 'Faretta hearing,' at which a defendant is made aware of the dangers and disadvantages of self-representation," where a defendant makes a "clear and unequivocal assertion of a desire to represent himself." Gill v. Mecusker, 633 F.3d 1272, 1293 (11th Cir. 2011) (citation and internal quotation marks omitted). An unclear or equivocal request will not do. Because "shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990); see also Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986) ("[P]etitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made.").

In Gill, the defendant became unhappy with his appointed counsel and "filed a motion for the appointment of substitute counsel." 633 F.3d at 1275. After this motion was denied, the defendant filed a "motion to dismiss appointed counsel and to allow the defendant to represent himself pro se." Id. This motion "reiterat[ed] all the allegations made" in the motion for substitute counsel and requested the

7

dismissal of counsel because the defendant believed he had to choose between "represent[ing] himself" or going to trial with unprepared counsel. Id. At a hearing on the motion, the defendant asked to represent himself because his counsel was unprepared. Id. at 1277. The defendant also said that he was in the "process of trying to retain private counsel" and would request a continuance once he had retained counsel. Id.

We concluded that these facts "demonstrate[d] that Gill's request was equivocal and was not sufficient to invoke Faretta." Id. at 1296. His requests were equivocal, we explained, because he "consistently coupled his request to represent himself with an expression of his preference for representation by a different lawyer." Id. "Specifically, Gill made clear to the trial court that he did not wish to proceed without counsel; rather, he wished to proceed with retained counsel . . . ." Id. at 1295. Because "Gill's invocation of his right to self-representation was equivocal," we affirmed the district court's denial of habeas relief. Id. at 1296.

Similarly, the defendant in Cross stated that "I want to be allowed to represent myself through this whole trial." 893 F.2d at 1291. We explained that this statement was—in a vacuum—"sufficiently clear and unambiguous" to require a Faretta inquiry. Id. But this statement was not "the only evidence on the record." Id. The defendant clarified that he was not "talking about getting up and making [m]otions and everything else," and he merely wanted to address the jury during opening

8

statements and to "make statements to the Court." Id.  This "compelling evidence" showed, we concluded, "that [the defendant] desired to act as co-counsel, rather than proceed pro se." Id.  Thus, there was no need to conduct a Faretta hearing. Id.

We provide one more illustration.  In Raulerson v. Wainwright, 732 F.2d 803, 808 (11th Cir. 1984), the defendant asked to be allowed to act as his own co-counsel. After the state trial court denied his motion, the defendant moved to represent himself. Id.  The state trial court then briefly allowed the defendant to act as co-counsel but reversed course after the Florida Supreme Court issued a decision disallowing "hybrid" representation. Id.  Several months later, the defendant renewed his request for self-representation but walked out of the courtroom during the Faretta inquiry.  We concluded that the defendant had waived his right to self-representation because, by voluntarily leaving during the hearing, he did not pursue his Faretta rights "diligently." Id.

Here, at the pretrial hearing where Edmondson first told the state trial court that he wanted to fire his lawyer, he described how his attorney did not care that the evidence in his case had been tampered with.  After Edmondson's request for substitute counsel was denied, Edmondson said that he could not afford a private attorney.  As for self-representation, he stated that "there is no way I'm going to be able to represent myself."  Right before Edmondson's trial started, he again tried to fire his lawyer because he "felt like [counsel] was working against [him] in this case"

9

and did not care that the state had allegedly tampered with the evidence. When the state trial court again denied the motion to discharge appointed counsel, Edmondson protested that his attorney had "just [gotten] [his] case" and was "not helping [him] one bit." And after saying that he would go to trial on his own "if [he] [had] to," Edmondson once more complained about his appointed attorney because counsel "refuse[d] to help [him] or listen to [him]" and did not care about the alleged tampering in his case.

Like in Gill, Edmondson's isolated comment about going to trial on his own "if" he had to was "far from a clear statement of [his] desire or intent to proceed without counsel." See 633 F.3d at 1295. Like in Gill, it was qualified and therefore equivocal. And like in Cross, Edmondson's "if-he-had-to" statement was not "the only evidence on the record." See 893 F.2d at 1291. It was instead sandwiched between Edmondson's complaints about his lawyer. His efforts to secure substitute counsel and prior concession that "there is no way I'm going to be able to represent myself" were "compelling evidence" that Edmondson had not made a "sufficiently clear and unambiguous" invocation of his right to self-representation. See id. And Edmondson kept trying to fire his attorney after he made this solitary remark, rather than unambiguously letting the state trial court know that he wanted to go pro se; thus, like in Raulerson, he did not pursue the matter of self-representation "diligently." See 732 F.2d at 809.

10

In sum, a finding that Edmondson did not clearly and unequivocally assert a desire to represent himself "could have supported[ ] the state court's decision." See Harrington, 562 U.S. at 102.  The district court therefore did not err in concluding that the state appellate court's rejection of Edmondson's Faretta claim was not an unreasonable application of clearly established federal law.  See Gill, 633 F.3d at 1296.  Simply put, Edmondson failed to meet his burden of "showing there was no reasonable basis for the state court to deny relief."  See Harrington, 562 U.S. at 98.

**AFFIRMED.**