

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-1-2000

# Buhl v. Cooksey

Precedential or Non-Precedential:

Docket 98-5342

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Buhl v. Cooksey" (2000). *2000 Decisions.* Paper 243.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/243

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 1, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-5342

LEROY BUHL,

      Appellant

v.

MR. COOKSEY, WARDEN;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 96-cv-00958)
District Judge: Honorable Mary L. Cooper

Argued: February 7, 2000

Before: SLOVITER, SCIRICA and McKEE, Cir cuit Judges.

(Filed: December 1, 2000)

        Steven A. Feldman, Esq. (Argued)
        Arza R. Feldman, Esq.
        Feldman & Feldman
        1800 Northern Boulevard
        Suite 206
        Roslyn, NY 11576

        Attorneys for Appellant

        Marcy H. Speiser, Esq. (Argued)
        Office of Attorney General of
        New Jersey
        Richard J. Hughes Justice Complex
        Trenton, NJ 08625

        Attorney for Appellees

OPINION OF THE COURT

McKEE, Circuit Judge.

Leroy Buhl appeals the district court's denial of the
habeas corpus petition he filed pursuant to 28 U.S.C.
S 2254. His petition originally contained several claims for
relief. However, Buhl only exhausted two of his claims, and
only one of those two exhausted claims is befor e us now.1
In the one claim that we consider, Buhl ar gues that he was
denied his constitutional right to conduct his own defense
during his criminal trial in state court. The district court
rejected that assertion without a hearing. W e hold that the
trial court's rejection of Buhl's clear and unequivocal
assertion of his right to proceed pr o se was improper.
Accordingly, we will vacate the district court's ruling and
remand for further procedures consistent with this opinion.

I. Background

On November 16, 1988, the State of New Jersey char ged
Buhl in a twenty-one count indictment with, inter alia,
kidnaping, criminal restraint, terroristic threats, possession
of a weapon for an unlawful purpose, aggravated sexual
assault, criminal sexual assault, aggravated assault, and
possession of a weapon by a previously convicted person.
The charges arose from a horrific 24 hour reign of terror
during which Buhl visited a living hell upon his victim. The
terror began when Buhl kidnaped a woman fr om a bar in
New Jersey in the early morning hours of August 6, 1988.
After kidnaping his victim, Buhl sexually assaulted, beat,
and threatened her over the course of the ensuing 24
hours. While holding her hostage, Buhl also dr ove his
victim to various locations in New Jersey and Pennsylvania
in her own car. Buhl's terrorized victim was only able to

_____

1. Buhl is currently an inmate at the U.S. Penitentiary in Terre Haute,
Indiana, serving a separate sentence of life imprisonment that is
unrelated to, and unaffected by, this appeal. The instant appeal only
relates to the aggregate sentence of life imprisonment plus 30 years
incarceration that was imposed by the State of New Jersey.

escape when Pennsylvania police stopped her car to investigate its temporary license plate. She was then able to run to the patrol car and tell the officers that she had been kidnaped, raped and assaulted; and beg the police for help. When he saw his victim run to the safety of the patr ol car, Buhl sped away, but he was captured appr oximately one month later. Thereafter, he was successfully prosecuted in federal court as well as the state courts of New Jersey and Pennsylvania for the various state and federal crimes he had committed in each jurisdiction during his rampage.

On December 20, 1990,2 -- appr oximately three weeks before his trial in the New Jersey state court was to begin -- Buhl filed a written motion to dismiss counsel and proceed pro se. In an affidavit accompanying that motion Buhl stated that he was dissatisfied with his attorney's investigation and that his lawyer was incompetent. See State v. Buhl, 635 A.2d 562, 570 (N.J. Super . Ct. App. Div. 1994). The trial judge held a hearing on that motion on January 22, 1991. During that hearing, the judge acknowledged that he had received the motion, and he reminded Buhl that the charges wer e "darn serious," and "overwhelming". App. at 12, 16. The judge then told Buhl that he (the judge) believed Buhl's motion to dismiss counsel was motivated by dissatisfaction with appointed trial counsel. The judge nevertheless asked Buhl if he wanted to proceed with his motion, and Buhl confirmed that he did. Id. at 12. Buhl told the court that he had "about twelve motions," he wanted to pursue if he was allowed to proceed pro se. He also explained, "I understand the charges against me[,] and I feel confident that I can handle these myself," and he informed the court that he had represented himself before "three separate times." Id. at 13-14.

The judge responded: "See the problem I've got, Mr. Buhl

_____

2. In its Memorandum, the district court stated that Buhl moved to proceed pro se on December 20, 1990; however, the New Jersey Superior Court, Appellate Division, noted that Buhl moved to represent himself on December 14, 1990, see State v. Buhl, 635 A.2d 562, 570 (N.J. Super. Ct. App. Div. 1994). The six day discrepancy has no impact on our analysis.

3

is the pro se application is based upon the fact that what your [sic] saying is that you don't have competent counsel . . . [A]m I right?" Buhl confirmed: "Yes, your Honor." Id. at 14. The judge concluded that Buhl should not be allowed to proceed pro se because Buhl's motion was based upon his belief that defense counsel was unprepar ed and incompetent. The judge stated:

> My inclination, and the nature of the char ges themselves also the kind of case we're dealing with here is not to allow Mr. Buhl to pr oceed pro se [,] but to give him the right to put what he wants to put on the record and lay it all out. I say you can make motions [pro se].

Id. at 24. The court then continued the case for approximately one month (apparently at defense counsel's request) to allow Buhl's attorney mor e time to contact additional witnesses. During the intervening month, Buhl continued to file pro se motions, but he did not file another motion to conduct his own defense during trial.

When court resumed for trial on February 25, 1991, Buhl's attorney recounted his attempts to track down various defense witnesses. Id. at 58-62. Once again, Buhl complained about a lack of communication with his counsel and, before jury selection began, he r enewed his motion to proceed pro se. The judge again denied his motion, and the court began jury selection. However , at the completion of jury selection, Buhl refused to participate in the proceedings and he was escorted from the courtroom. Buhl's trial lasted from February 25, 1991, until March 6, 1991. The jury convicted Buhl on all of the r emaining eighteen counts of the indictment,3 and he was subsequently sentenced to an aggregate ter m of life imprisonment plus thirty years with a forty-year par ole ineligibility. The sentence was consecutive to a federal sentence of life imprisonment for kidnaping that has been affirmed by this court,4 and a sentence of twenty to forty

_____

3. Two counts were dismissed during the trial on jurisdictional grounds; another count was severed.

4. See United States v. Buhl, 899 F .2d 1219 (3d Cir. 1990) (unpublished table decision).

4

years incarceration that had been imposed in state court in Pennsylvania following his conviction there.

Thereafter, Buhl obtained new counsel who appealed Buhl's New Jersey conviction to the New Jersey Superior Court, Appellate Division, alleging, inter alia , that the trial court had denied Buhl's constitutional right of self-representation. See State v. Buhl, supra. The Appellate Division rejected all of Buhl's claims and affirmed his conviction. The court concluded that Buhl's Sixth Amendment right to conduct his own defense had not been denied because his request to do so was under mined by his subsequent vacillation. The court reasoned that even though Buhl initially insisted on representing himself at trial, he subsequently "expressly agr eed" to allow counsel to represent him "on the condition that he[Buhl] be permitted to file pro se motions and advance supplemental arguments." Buhl, 635 A.2d at 571. The Appellate Division concluded that Buhl was not entitled to this hybrid representation, and his assertion that the trial court had improperly denied his request to pr oceed pro se was therefore without merit. The court r elied upon McKaskle v. Wiggins, 465 U.S. 168 (1984), in concluding that "[Buhl's] subsequent complaints [lost] much of their for ce," because he accepted the trial court's offer of hybrid representation. Buhl, 635 A.2d at 571-572. The court also thought that the request that was made immediately prior to impaneling the jury on February 25, 1991, was untimely because the judge would have had to continue the trial in order to allow Buhl to conduct his own defense. Thus, reasoned the Appellate Division, the prosecutor's "legitimate demand for stability in the scheduling of cases was properly accor ded priority." Id. at 572.

The New Jersey Supreme Court refused to hear Buhl's appeal from the decision of the Appellate Division, and Buhl thereafter filed a petition under 28 U.S.C. S 2254 alleging four grounds for relief. The district court dismissed that petition because it contained unexhausted claims. However, we granted a certificate of pr obable cause5 and

_____

5. Buhl's petition was filed before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDP A"), and thus, we use the pre-AEDPA terminology of "certificate of probable cause."

remanded the case so that the district court could consider the two exhausted claims.

On remand, the district court considered and rejected Buhl's exhausted claims,6 and denied his petition. The district court agreed with the Appellate Division that Buhl's Sixth Amendment claim had actually been an assertion of incompetent counsel, and that Buhl had vacillated between assigned counsel and self-representation. Dist. Ct. Op. at 12. The court found that Buhl's concession to hybrid representation negated the need for any further inquiry into his written motion to proceed pro se. Id. The district court concluded, the trial court had properly denied Buhl's February 25, 1991 request because it was made on the eve of trial, it was really a complaint about trial counsel's stewardship, and granting the request would have further delayed the proceedings. Id. at 12-13. The district court then denied Buhl's petition on the merits, and later denied an application for a certificate of probable cause. We granted a certificate of appealability and this appeal followed. Buhl has raised only the Sixth Amendment claim in briefing and in argument, and that is the only claim we will address.

II. Discussion

We have jurisdiction to review Buhl's appeal under 28 U.S.C. SS 1291, 2253. Our review of the district court's legal conclusions is plenary. See Bey v. Morton, 124 F.3d 524, 528 (3d Cir. 1997); Walker v. V aughn, 53 F.3d 609, 613 (3d Cir. 1995). Under the pre-AEDPA standard, the state court's factual findings are presumed to be correct unless, inter alia, the state court's findings ar e not "fairly supported by the record." Pemberthy v. Beyer , 19 F.3d 857, 864 (3d Cir. 1994) (quoting 28 U.S.C. S 2254(d)(8)). The state court's legal findings, however, are not entitled to deference.7

_____

6. The district court considered Buhl's claim that the district court violated the Interstate Agreement on Detainers Act, 18 U.S.C. app. 2 S 2, and his claim that the trial court improperly denied his motion to proceed pro se in violation of the Sixth Amendment.
7. The revisions to 28 U.S.C. S 2254(d) contained in the Antiterrorism and Effective Death Penalty Act ("AEDP A") do not apply to this case because Buhl filed his petition for habeas corpus before AEDPA was enacted. See Lindh v. Murphy, 521 U.S. 320, 326 (1997); Bey v. Morton, 124 F.3d 524, 528 (3d Cir. 1997).

Buhl contends that the trial court failed to comply with the dictates of Faretta v. Califor nia, 422 U.S. 806 (1975), and that this violated his right of self-repr esentation under the Sixth Amendment. The Sixth Amendment right of self-representation differs from other constitutional rights because it can not be exercised without the concomitant waiver of another fundamental right that is also guaranteed under the Sixth Amendment; the right to counsel. 8 It is axiomatic that a criminal defendant's waiver of a constitutional right must be voluntary, knowing and intelligent. Therefore, the constitutional right of self-representation in a criminal case is conditioned upon a voluntary, knowing and intelligent waiver of the right to be represented by counsel. See Far etta, 422 U.S. at 835; Edwards v. Arizona, 451 U.S. 477, 482 (1981). Waiver of the right to counsel "depends in each case `upon the particular facts and circumstances surr ounding that case, including the background, experience, and conduct of the accused.' " Edwards, 451 U.S. at 482 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); United States v. Salemo, 61 F.3d 214, 218 (3d Cir. 1995). The trial judge must "make a thorough inquiry and . . . take all steps necessary to insure the fullest protection of this constitutional right." Id. at 219 (quoting Von Moltke v. Gillies, 332 U.S. 708, 722 (1948) (Black, J., plurality opinion)).

Courts must indulge every reasonable pr esumption against a waiver of counsel. See Johnson, 304 U.S. at 464; Salemo, 61 F.3d at 218. In order to overcome this presumption, and conduct his/her own defense, a defendant must clearly and unequivocally ask to pr oceed pro se. See Faretta, 422 U.S. at 835 (noting that the defendant had properly asserted his right to r epresent himself because he "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel"); Stano v. Dugger, 921 F.2d 1125, 1143 (11th Cir. 1991) (en banc) (noting that, while the right to counsel "attaches automatically and must be waived affirmatively to be lost," the right to self-representation does

_____

8. The right to counsel is generally recognized to be the paramount right vis a vis the right to self-representation. See, e.g., Tuitt v. Fair, 822 F.2d
166, 177 (1st Cir.), cert. denied, 484 U.S. 945 (1987).

not "attach unless and until it is asserted"); Brown v.
Wainwright, 665 F.2d 607, 610 (5th Cir. 1982) (en banc)
(same).9

In Faretta, the court appointed a public defender to
represent the defendant during his criminal trial. However,
"[w]ell before the date of trial, . . . Faretta requested that he
be permitted to represent himself." Id. at 807. Faretta "did
not want to be represented by the public defender because
[he] believed that that office was very loaded down with . . .
a heavy case load." Id. at 807-8. The trial judge initially
allowed Faretta to proceed pro se but warned that the
ruling would be reversed if it appeared that Faretta could
not adequately defend against the charges."Several weeks
thereafter, but still prior to trial, the judge sua sponte held
a hearing to inquire into Faretta's ability to conduct his
own defense, and questioned him specifically about. . ." his
knowledge of certain rules of law and his familiarity with
court practice and procedure. Id. at 808. When Faretta was
unable to answer the inquiry to the trial judge's
satisfaction, the judge reversed his prior ruling, denied
Faretta's request to waive counsel and conduct his own
defense, and reappointed the public defender to represent
him. Id. The judge also rejected Far etta's request to file
certain pro se motions and his r equest to act as co-counsel
along with appointed counsel. Id.

Faretta went to trial represented by the public defender

_____

9. See, e.g., Tuitt, 822 F.2d at 177 (defendant who wants to proceed pro
se may be required to give an unequivocal waiver of right to counsel);
United States ex rel. Maldonado v. Denno, 348 F.2d 12, 15-16 (2d Cir.
1965) (in order to invoke right, defendant must make unequivocal
request), cert. denied, 384 U.S. 1007 (1966); United States v. Oakey, 853
F.2d 551, 553 (7th Cir. 1988) (r equest properly denied in part because
it was ambiguous); Jackson v. Ylst, 921 F .2d 882, 888 (9th Cir. 1990)
(right to proceed pro se is waived if not unequivocally and timely
asserted); Munkus v. Furlong, 170 F.3d 980, 983-984 (10th Cir. 1999)
(clear and unequivocal declaration of intention to r epresent self is
first of
several requirements defendant must meet in order to invoke right);
Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986) ("petitioner
must do no more than state his request, either orally or in writing,
unambiguously to the court so that no reasonable person can say that
the request was not made").

and was convicted. He appealed arguing that he was entitled to a new trial because the trial judge had denied his Sixth Amendment right of self-representation by forcing him to proceed to trial represented by the public defender. The Supreme Court agreed. After car efully reviewing the historical underpinnings of the right to counsel, the Court concluded:

> The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant--not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.

Id. at 820 (footnote omitted). The Court concluded that a state may not force a criminal defendant to be represented by a lawyer if the defendant properly asserts his/her right to self-representation. Id. at 836. The Court held that a defendant must be allowed to represent him/herself when a proper request is made and counsel is waived, even though such a defendant will nearly always be better off with an attorney. The issue is not the defendant's skill, nor the likelihood of mounting a successful defense. Rather, the issue is whether a defendant knowingly, intelligently, and voluntarily waived the right to be repr esented by counsel, by clearly asserting his/her right of self-r epresentation under the Sixth Amendment.

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the recor d will establish that he knows what he is doing and his choice is made with eyes open.

Id. at 835.

9

Faretta had "clearly and unequivocally" informed the trial judge that he wished to proceed pro se and that he did not wish to be represented by the public defender weeks before trial. Id. at 835. Faretta had previously represented himself in a criminal prosecution, and he had a high school education. Therefore, he was "literate, competent, and understanding, and [the Court concluded that] he was voluntarily exercising his informed free will." Id. The Court also concluded that the trial court had erred in conditioning Faretta's right to proceed pro se on "his technical legal knowledge," rather than focusing on "his knowing exercise of the right to defend himself." Id. at 835–836. Accordingly, the Court vacated Faretta's conviction and remanded for a new trial. Id.

Thus, once a defendant waives representation by counsel and asserts the constitutional right of self-representation at a criminal trial, the trial court must "fully inform him in some manner of the nature of the charges against him, the possible penalties, and the dangers of self-representation." United States v. Hernandez, 203 F.2d 614, 624 (9th Cir. 2000) (citations and footnotes omitted). This obligation arises under the Constitution, and it applies to state, as well as federal judges.

> As a matter of constitutional law, we have imposed a clear and unambiguous obligation upon a trial judge . . . [w]hether it be a U.S. District Judge or a U.S. Magistrate Judge in a federal prosecution or a state judge in a state criminal proceeding, the trial judge must conduct a colloquy with the accused to determine that the waiver is not only voluntary, but also knowing and intelligent.

Henderson v. Frank, 155 F.3d 159, 166 (3d Cir. 1998).

Accordingly, we must first determine whether Buhl's purported assertion of his right to conduct his own defense triggered an inquiry under Faretta. If it did, we must then determine whether the court's inquiry was adequate. We also must consider what effect, if any, the trial court's offer of a kind of hybrid representation had upon Buhl's claim for relief under S 2254. Finally, we must decide what impact, if any, Buhl's refusal to participate in the trial had upon the rights he is asserting.

10

A. Did Buhl Adequately Assert His Right of
      Self-Representation?

As noted above, a defendant's request of self-representation in a criminal trial must be made clearly and unequivocally. This requirement pr events defendants from making casual and ineffective requests to proceed pro se, and then attempting to upset "adverse ver dicts after trials at which they had been represented by counsel." Maldonado, 348 F.2d at 16. It also keeps defendants from proceeding pro se, then challenging any subsequent conviction by alleging a denial of the right to counsel. Requiring a clear and unequivocal assertion of the right also protects defendants from inadvertently waiving counsel based upon " `occasional musings on the benefits of self-representation,' " United States v. Frazier-el, 204 F.3 553, 558 (4th Cir. 2000) (quoting United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994)).

A defendant need not "recite some talismanic formula hoping to open the eyes and ears of the court to his request" to invoke his/her Sixth Amendment rights under Faretta. Dorman, 798 F .2d at 1366. Indeed, such a requirement would contradict the right it was designed to protect as a defendant's Sixth Amendment right of self-representation would then be conditioned upon his/her knowledge of the precise language needed to assert it. Rather than placing such a burden on a defendant, the law simply requires an affirmative, unequivocal, request, and does not require that request to be written or in the form of a formal motion filed with the court. See United States v. Leggett, 162 F.3d 237, 249 (3d Cir . 1998) (citing United States v. Goldberg, 67 F.3d 1092, 1099 (3d Cir. 1995)), cert. denied, 120 S. Ct. 167 (1999). Here, Buhl did more than that.

It is undisputed that Buhl filed a written motion to proceed pro se on December 20, 1990, and it is clear that the trial court understood that Buhl was asserting this right because the court held a hearing on that motion a month later on January 22, 1991. However, at that hearing, the court focused on Buhl's motivation for filing the motion, rather than inquiring into whether Buhl's request was knowingly, voluntarily, and intelligently made. That focus

11

caused the court to conclude that Buhl's request was motivated by his dissatisfaction with his appointed attorney. The following exchange at the January hearing is illustrative:

> THE COURT: Okay, the first thing I want to take care of is Mr. Buhl's motion. Mr. Buhl has got a motion to proceed pro se. Mr. Buhl, stand up please, sir. Mr. Buhl, you've got a motion to proceed pr o se. I've got a lot of difficulty with the motion. I mean I don't know anything bought (sic) the case. All I know is there are darn serious charges here and your (sic) proceeding pro se is of great concern to me and I r ead the motion that you made.
> The reason, apparently, is you're not satisfied with your attorney.10 Do you want to proceed with your motion?
>
> BUHL: Yes, your Honor. If I may, I tried to call [defense counsel's] office. Of the times I've succeeded to talking to [him] approximately one time on the telephone for five minutes. He visited me briefly for about an hour, he talked--
>
> THE COURT: When was that?
>
> BUHL: He talked at me rather than to me. . ... Further more, as far as this self representation, I've got about twelve motions that if I'm allowed to proceed pro se, I will file these motions with the Clerk of the Court for the court's decision to be made.
>
> Like I say, there are about a dozen motions. I tried to contact [my attorney] and I've written letters. I'm not getting any place fast. I just got my legal material this morning. . . . .

_____

10. The dissent minimizes the judge's statement by asserting that it was "no more than a confirmation of what Buhl repeatedly told the court, . . ." Dissent at 39. However, it is clear that it was more than an "affirmation" of Buhl's request. The trial judge was clearly stating that he had a "problem" with the request. That "problem" arose solely from the judge's belief that Buhl's assertion of his constitutional right of self-representation was not an appropriate way to address Buhl's dissatisfaction with defense counsel.

App. at 12-13.

Buhl also told the court that he had repr esented himself on three prior occasions, and proclaimed:"I understand the charges against me[,] and I feel confident that I can handle these myself." Id. at 13-14. The court denied his request, and the case was eventually adjourned until February 25th, 1991. On that date, before the court began selecting the jury, Buhl reiterated his desire to conduct his own defense. He stated: "Under State versus Califor nia, I would like to represent myself." The judge replied: "Your application is again denied." Id. at 67.

On this record, "no reasonable person can say that the request [for self-representation] was not made." Dorman, 798 F.2d at 1366. The State argues that Buhl vacillated by asking to proceed pro se while agreeing with the trial judge's conclusion that his wish to proceed pro se was based upon his dissatisfaction with counsel.11 In affirming Buhl's conviction, the New Jersey Appellate Division noted that "[t]hrough specific inquiry with the defendant, it became apparent almost at the outset that his principal complaint pertained to his attorney's alleged incompetence. Defendant repeatedly expressed his mounting frustration that his case was not being given the attention it r equired." Buhl, 635 A.2d at 570. The district court agreed. That court stated:

> After petitioner asserted his desire to pr oceed pro se, the trial judge began the required inquiry to ascertain whether the defendant knowingly and intelligently wished to waive his right to counsel. . . . It quickly became apparent that petitioner was actually claiming incompetency of counsel. [App. at 14.] The judge even asked petitioner to clarify for the recor d, `Essentially, what your (sic) saying is incompetency of counsel, am

---

11. Our dissenting colleague argues: "The record demonstrates Buhl did not clearly or unequivocally waive his right to counsel and invoke his right to self-representation," dissent at 39, because his subsequent conduct "was tantamount to a withdrawal of his self-representation request.' Id at 40. However, the issues that arise from Buhl's subsequent conduct are distinct from the issue of whether he clearly and unequivocally asserted his right to proceed pro se in the first place.

13

> I right?' Petitioner then responded, `Y es, your honor.'
> (Id.) Thus petitioner characterized his own claim as one
> of incompetency of counsel rather than as an attempt to
> represent himself.

Dist. Ct. Op. at 12. (emphasis added). However , the district court only referenced part of the exchange between the trial court and Buhl. The context of that exchange confirms that although Buhl did agree that he believed his counsel was incompetent, that belief did not alter the fact that he was attempting to waive representation by counsel, and proceed pro se. He was not requesting substitute counsel. As noted above, the trial court stated:

> See the problem I've got, Mr. Buhl, is the pro se
> application is based upon the fact that what your (sic)
> saying is that you don't have competent counsel. . ..
> Your pro se application is based upon the fact -- . . .
> The pro se application is based upon the fact that your
> (sic) saying that I have counsel, in my opinion, is not
> working in my best interest, not doing the thing that
> he is supposed to do that I want him to do for me.
> Essentially, what your (sic) saying is incompetency of
> counsel, am I right?

App. at 14. Although Buhl confirmed the court's assessment by answering: "[y]es, your Honor ," that did not alter the trial court's obligation to conduct an appropriate inquiry into Buhl's purported waiver of counsel, and his request to proceed pro se. Id.  Buhl's motivation for waiving counsel was not the issue. Common sense suggests (and experience confirms) that nearly every r equest to proceed pro se will be based upon a defendant's dissatisfaction with counsel. It is the rare defendant who will ask to proceed pro se even though he/she is thoroughly delighted with counsel's representation, ability, and pr eparation. Therefore, it should come as no surprise that Buhl's request was motivated by his dissatisfaction with defense counsel. However, a defendant's constitutional right of self-representation is not automatically negated by his/her motivation for asserting it.12

_____

12. The dissent disagrees that nearly all requests to proceed pro se are motivated by dissatisfaction with defense counsel and quite correctly

14

In fact, it is clear from the Supreme Court's opinion that Faretta was motivated by his displeasur e with defense counsel. Buhl's motivations, and his complaint that his attorney had not spent enough time preparing the case were the same as Faretta's. Faretta explained his request to proceed pro se by declaring that "he did not want to be represented by the public defender because he believed that that office was `very loaded down with . . . a heavy case load,' " 422 U.S. at 807, and counsel would therefore not have time to properly prepare a defense. The Court concluded that Faretta's concern about the quality of counsel's representation was not r elevant to resolving the issues raised by Faretta's request to pr oceed pro se. The Court stated:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But wher e the defendant will not voluntarily accept repr esentation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. . . . The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be fr ee personally to decide whether in his particular case counsel is to his advantage.

Id. at 834.

Once Buhl properly asserted his right to pr oceed pro se the trial court was obligated to undertake an appr opriate inquiry under Faretta even though Buhl's request apparently rested upon nothing other than dissatisfaction with defense counsel. Moreover, that duty was not

_____

notes: "some requests may be merely attempts to delay trial." Dissent at 39, n.2. However, as we note below, we have ruled that the trial court has a duty to make an appropriate inquiry into the right to proceed pro se under Faretta, even wher e it appears that the defendant is attempting to delay the proceedings. See United States v. Welty, 674 F.2d 185, 189 (3rd Cir. 1982) ("even well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights.").

15

mitigated by the court's laudable concern over the quality of the defense Buhl would have if he waived counsel and proceeded to trial, nor the seriousness of the charges. "[A]lthough he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." Id. (internal quotations omitted).

B. Was Buhl's Motion to Proceed Pro Se Timely?

The district court concluded that Buhl's February 25th request to proceed pro se was untimely because "[j]ury selection was set to begin that day, and granting the motion at that point would have necessitated a continuance." Dist. Ct. Op. at 13. The Appellate Division had concluded:"It is abundantly plain that the trial judge would have been required to continue the trial for a substantial period of time had he acceded to [Buhl's February 25th] demand." Buhl, 635 A.2d at 572. However, the timing of the request is only one factor that a court must consider in ruling upon a motion to proceed pro se. Accordingly, we have even found that requests made on the "eve of trial" were valid. See Government of the Virgin Islands v. James, 934 F.2d 468 (3d Cir. 1991) (request to dismiss lawyer and proceed pro se made before jury selection on the day of trial valid); Government of the Virgin Islands v. Charles, 72 F.3d 401 (3d Cir. 1995) (request made the day before trial began). The dissent argues that Buhl's second r equest was untimely because it "came after [Buhl] had already been granted one trial continuance to allow him to continue to prepare for trial. . . . [G]ranting Buhl's second request on the morning of trial would have unduly delayed the trial." Dissent at 41, n. 4. However, the dissent's position ignores the fact that Buhl originally filed his motion on December 20, 1990; several weeks before his trial was scheduled to begin. The trial court held a hearing on that motion a month later on January 22, 1991, and Buhl's trial was then scheduled to begin the following day. At no time during that January 22nd hearing did the trial court even attempt an appropriate inquiry under Faretta . Rather, Buhl's attorney requested a continuance so that he (defense counsel) could better address Buhl's concerns about potential witnesses.

16

The trial was then rescheduled to February 25, 1991. On that date, Buhl orally renewed his motion to pr oceed pro se before jury selection began. The request was summarily denied, and jury selection began. App. at 67.

Therefore, the second request (which is really nothing more than a reassertion of the prior written motion) is irrelevant to our timeliness inquiry because the Faretta violation had already occurred.13 Buhl had already clearly asserted his right to proceed pro se in a timely manner. See Williams v. Bartlett, 44 F.3d 95, 99 (2d Cir. 1994) (right is unqualified if request made before start of trial); Chapman v. United States, 553 F.2d 886, 894 (5th Cir. 1977) (motion timely if made before jury impaneled); United States v. Lorick, 753 F.2d 1295, 1298 (4th Cir .) (request must be asserted before trial), cert. denied, 471 U.S. 1107 (1985); Fritz v. Spalding, 682 F.2d 782, 784 (9th Cir. 1982) (request made before jury impanelment is timely); Horton v. Dugger, 895 F.2d 714, 717 (11th Cir. 1990) (r equest untimely because meaningful trial proceedings had taken place since a jury had been selected); see also Pitts v. Redman, 776 F.Supp. 907, 920–921 (D. Del. 1991) (Roth, J.) (request on third day of trial not made "before meaningful trial proceedings had begun" and therefor e untimely), aff 'd 970 F.2d 899 (3d Cir.), cert. denied , 506 U.S. 1003 (1992).

The dissent is concerned that the recor d "strongly suggests Buhl's request was intended mer ely for delay." Dissent at 41, n.4. However, the recor d does not support that conclusion. The trial judge certainly voiced no such concern, nor did he attribute any such motivation to Buhl. The court did inquire about the length of the trial in addressing Buhl's original pro se request, but the court never suggested that Buhl was attempting to delay or

_____

13. The dissent quite correctly states that"Buhl was required to make a clear and unequivocal request to proceed pro se." Dissent at 40. However, the dissent then conflates the obviously clear and unequivocal request Buhl made in his written motion with his motivations for asserting his right to proceed pro se, and the subsequent hybrid representation that he was afforded after the Faretta violation,and erroneously concludes that Buhl's request"was not clear and unequivocal, because he willing accepted the hybrid representation. . . ." Dissent at 41.

17

disrupt the proceedings, nor did it ever suggest that the timing of the request somehow negated its obligations under Faretta. In fact, the pr osecution did not even object, or claim that any delay would prejudice its case. Rather, during the January hearing, the judge made the following inquiry:

> THE COURT: . . . [H]ow many witnesses has the State got?
>
> STATE: There ar e 22 on the witness list, Judge.
>
> THE COURT: So you're talking about how long a trial?
>
> STATE: Two weeks.
>
> THE COURT: You know, and the charges here are just overwhelming to me. I don't care what your background is. I've heard all kinds of things, I really don't care. I'm concerned about this trial and these are serious charges.
>
> BUHL: I've got at least that many witnesses. I sent a witness list to . . . the Public Defender's office. November 13th, I sent it . . . and I have not got any response. Like I say, I've got pretrial motions. I think these thinks (sic) should be heard. . .. Certainly if I'm not allowed to prepare and present pr etrial motions, these things can never be decided.

App. at 16. The record does reflect that the judge was understandably anxious to begin the trial. In suggesting that counsel would conduct the defense, but that Buhl would be allowed to file whatever motions he wanted the court stated:

> I will make whatever concessions, I will do whatever I have to do to make sure that you get those things on the record. There's only two things, that I am not stoping (sic) the trial, I am going to pr oceed with the trial, okay? And my other concern is appearing pro se, and my inclination is not to allow you to appear pro se. But anything else, I am receptive to putting it on the

18

>       record any way you want to do it, but it's got to be
>       done the right way.14

Id. at 18. Moreover, the judge did continue the trial for
approximately one month at defense counsel's r equest so
that counsel could try to locate witnesses. Id. at 58.

The State argues that the "lateness" of Buhl's "second
request" undermines the constitutional right it is based
upon because granting it would have delayed the
proceedings. The State reminds us that the trial court had
already granted a continuance when Buhl r enewed his
request to represent himself on "the eve of trial." The State
claims that since the judge had continued the trial for one
month at defense counsel's request, Buhl could have
renewed his motion during the month between the January
22nd and the February 25th hearings when he filed other
motions. However, his failure to do so is irrelevant because
the law imposes no such obligation as a condition
precedent to preserving one's right to pr oceed pro se. Orazio
v. Dugger, 876 F.2d 1508, 1512 (11th Cir . 1989) (defendant
did not need to "continually renew his r equest to proceed
pro se after it had been conclusively denied.").15

Moreover, although we note that the r ecord does not
establish any dilatory motives on the part of Buhl, we do
not suggest that a finding of such motives would negate the
court's duty to inquire under Faretta. As we noted earlier,
in United States v. Welty, 674 F .2d 185, 193 (3d Cir. 1982),
such an inquiry is required even when the trial judge
suspects that the defendant is "attempting to disrupt the
administration of justice by manipulative requests for, and
dismissals of, counsel." See id. at 189 ("While we can
understand, and perhaps even sympathize, with the
frustration and exasperation of the district court judge,
even well-founded suspicions of intentional delay and
manipulative tactics can provide no substitute for the

_____

14. We discuss whether this "hybrid" procedure in any way compromised
Buhl's right of self-representation below.

15. Ironically, had Buhl not reiterated his request immediately before
jury selection the State would most certainly ar gue that he waived his
written motion by failing to reiterate the r equest prior to jury
selection.

19

inquiries necessary to protect a defendant's constitutional rights.").

This is not to suggest, however, that a r equest to proceed pro se may never be denied when it r esults in an unjustifiable interruption of court proceedings. See Fritz, 682 F.2d at 784; Horton, 895 F .2d at 717 n.2; United States v. Walker, 142 F.3d 103, 109 (2d Cir.) (defendant's reasons for self-representation insufficient and improper where intent is to secure delay and obstruct the or derly course of justice) cert. denied, 525 U.S. 896 (1998); cf. Chapman, 553 F.2d at 895 (no indication that defendant's r equest was designed to achieve delay or tactical advantage, and request should have been honored). A court may conclude that a defendant who intends nothing more than disruption and delay is not actually tendering a knowing, voluntary and intelligent waiver of counsel, and has not unequivocally asserted the constitutional right to conduct his/her own defense. While this determination may well pr esent difficulties, it is the kind of inquiry district courts routinely make. See Welty, 674 F.2d at 191 ("conducting an inquiry into waiver of counsel, [presents] the district court . . . with a difficult task. Particularly . . . when the defendant, as is [the defendant] here, . . . is appar ently street-wise and experienced in the litigation process . . . . But the making of such determinations and inquiries is not unusual for a district court. Determinations of effective waiver, voluntariness, and the like, are routinely made in various contexts. . . ."). However, the court can not properly make such a determination without first conducting an adequate inquiry under Faretta.

Here, the Appellate Division acknowledged that"generally [ ] a request to proceed pro se made before a jury is sworn should ordinarily be honored," but stated that "this proposition has been stated too broadly. The right of self-representation cannot be insisted upon in a manner that will obstruct the orderly disposition of criminal cases. A defendant desiring to exercise the right must do so with reasonable diligence." Buhl, 635 A.2d at 571. Accordingly, the Appellate Division concluded that Buhl's February 25 request was untimely even though it was made before the jury was impaneled. The court concluded that "[t]he

20

prosecutor's legitimate demand for stability in the scheduling of cases was properly accorded priority," id., and the district court agreed. However, that consideration is not supported by this record. As noted earlier. Buhl made his request well in advance of trial. Mor eover, the prosecutor never voiced this concern.

We agree that the "right of self-r epresentation is not a license to disrupt the criminal calendar, or a trial in progress," Buhl, 635 A.2d at 571 (citing Mayberry v. Pennsylvania, 400 U.S. 455, 468 (1971) (Bur ger, J., concurring)), but that is simply not the issue her e. We have previously acknowledged the importance of the efficient administration of justice noting "that ther e are countervailing governmental interests" that should be considered when a defendant asserts a "last-minute request for substitution of counsel and a continuance," United States v. Goldberg, 67 F.3d 1092, 1098 (3d Cir. 1995). However, where fundamental rights ar e at stake, " `a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation.' " Id. (quoting United States v. Rankin, 779 F .2d 956, 960 (3d Cir. 1986)). The trial was not in progress when Buhl attempted to waive counsel and conduct his own defense, or when he subsequently renewed that effort prior to jury selection.16 Accordingly, we hold that Buhl made a timely r equest to represent himself.

_____

16. After a trial has commenced, the right of self-representation is curtailed, and "the judge considering the motion must `weigh the prejudice to the legitimate interests of the defendant' against the `potential disruption of proceedings already in progress.' " UnitedStates v. Stevens, 83 F.3d 60, 66-67 (2d Cir.) (quoting Maldonado, 348 F.2d at 15) cert. denied, 519 U.S. 902 (1996); see also United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996) (noting that the judge has discretion to allow or deny a request after trial has begun). The Supreme Court recently noted that "[e]ven at the triallevel, [ ], the government's interest
in ensuring the integrity and efficiency of the trial at times outweighs the
defendant's interest in acting as his own lawyer." Martinez v. Court of Appeal of California, Fourth Appellate District, 120 S. Ct. 684, 691 (2000).

C. The Trial Court's Faretta Inquiry.

Faretta held that a defendant attempting to proceed pro se at trial "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." 422 U.S. at 835. We amplified this requirement in Welty.[17] There, a defendant expressed dissatisfaction with trial counsel and was of fered a choice of proceeding with the attorney who had been appointed, or proceeding pro se. The defendant elected to dismiss his attorney and proceed pro se. Not surprisingly, he was convicted. He thereafter appealed his conviction arguing that the purported waiver of his Sixth Amendment right to counsel was invalid. We agreed, and or dered a new trial. In doing so, we noted that trial courts must conduct a two-prong inquiry when a defendant seeks new counsel "on the eve of trial." Id. at 187. The court mustfirst determine the reasons for the defendant's dissatisfaction with counsel in order to decide if there is "good cause" to dismiss counsel and delay the proceedings. If good cause exists counsel should be dismissed even though it may necessitate continuing the trial. Id. However, if the court concludes that good cause does not exist, "the defendant is then left with a choice between continuing with his existing counsel or proceeding to trial pro se." Id.

Here, Buhl did not request substitute counsel. Rather, from the outset he sought only to proceed to trial with no counsel. Accordingly, the first prong of the Welty inquiry is

_____

17. Although Welty was decided on direct appeal of a conviction in a district court, "[t]he same standard for determining whether a defendant waived his right to counsel applies in federal court habeas corpus review of state court proceedings." Piankhy v. Cuyler, 703 F.2d 728, 731 n.3 (3d Cir. 1983) (citing Brewer v. W illiams, 430 U.S. 387, 403-04 (1977)).

Circuit Courts of Appeals differ as to the extent of the inquiry that is required. See McDowell v. United States, 484 U.S. 980 (1987) (White, J., dissenting from denial of certiorari). W e endorse a more formalized inquiry, as do several other circuit courts of appeals. See United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir . Unit B Dec. 1981); United States v. Edwards, 716 F.2d 822, 824 (11th Cir. 1983); United States v. Waters, 158 F.3d 933, 944 (6th Cir . 1998); United States v. Bailey, 675 F.2d 1292, 1300-1301 (D.C. Cir.), cert. denied, 459 U.S. 853 (1982).

22

not our focus here. However, in James, we noted that even in a case where a defendant only asks to pr oceed pro se, the court must make some inquiry about a defendant's reasons for the request. See James, 934 F.2d at 471. It is clear from our discussion in James, that the inquiry into a defendant's motives is necessary and appropriate because it helps the trial court determine if the purported waiver of counsel is voluntary, knowing and intelligent. For example, it allows a court to determine if a defendant is truly asserting the right of self-representation, or merely seeking alternative counsel. Id. ("W e find . . . that the district court's inquiry was sufficient to determine the reasons for James dissatisfaction and that good cause for substitution of counsel did not exist"). It also assists the court in determining if the request is mer ely an attempt to delay and derail the proceedings, as opposed to a genuine attempt (no matter how ill-advised) to conduct one's own defense. In Welty we elaborated upon the nature of the inquiry a trial court must conduct when a defendant waives counsel and asks to represent him/herself. We stated that the trial judge must:

> [T]ake particular pains in discharging .. . these inquiries concerning . . . waiver of counsel. Perfunctory questioning is not sufficient. This is true even when the trial judge strongly suspects that the defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial. Although such tactics by an accused cannot be allowed to succeed, at the same time, a trial cannot be permitted to go forward when a defendant does not fully appreciate the impact of his actions on his fundamental rights.

Id. We then amplified the substance of the inquiry required for a valid waiver of counsel. We stated:

> In order to ensure that a defendant truly appreciates the dangers and disadvantages of self-repr esentation, the district court should advise him in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful. The district court judge should tell the defendant, for example, that

23

he will have to conduct his defense in accor dance with the Federal Rules of Evidence and Criminal Pr ocedure, rules with which he may not be familiar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the effectiveness of his defense may well be diminished by his dual role as attorney and accused. In addition, as Justice Black wrote in Von Moltke v. Gillies . . . (t)o be valid (a defendant's) waiver must be made with an apprehension of the nature of the char ges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

Welty, 674 F.2d at 188-9 (internal citations and quotations omitted). See also Salemo, 61 F.3d at 220.

We also concluded that the trial court must satisfy itself that the defendant understands the significance and effect of his/her purported waiver and not merely accept the defendant's statement to that effect. "The mere fact that an accused may tell (the court) that he is infor med of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." Welty, 674 F.2d at 189 (quoting Von Moltke v. Gillies, 332 U.S. 708, 724 (1948) (Black, J. plurality opinion)). "This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether ther e is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether ther e is a proper waiver should be clearly determined by the court, . . . ." Johnson v. Zerbst, 304 U.S. 458, 465 (1938). The trial court's determination that the waiver is knowing, voluntary and intelligent must be based upon "a penetrating and comprehensive examination of all the cir cumstances." Welty, 674 F.2d at 189.18 A purported waiver of counsel

_____

18. We reiterate here, as we didin Welty, that we do not require the kind of "detailed listing of advice similar[ly] . . . mandated for guilty plea proceedings . . . pursuant to Rule 11 of the Federal Rules of Criminal Procedure." 674 F.2d at 189.

24

"can be deemed effective only where the [trial judge] has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary." Id. "The entire procedure requir es not only an intricate assessment of the defendant's intent, knowledge, and capacity, but a strong measure of patience as well." Williams, 44 F.3d at 100 (inter nal quotations omitted).

It is clear that the trial judge here failed to conduct an adequate inquiry under Faretta. This record can support no other conclusion. Although the trial judge attempted to ascertain if Buhl was dissatisfied with counsel as well as the reasons for any dissatisfaction as r equired by the first prong of the Welty inquiry, the judge never attempted the second prong of the Welty inquiry at all. In denying Buhl's petition under S 2254, the district court r easoned that since Buhl's actual claim was incompetency of counsel and Buhl assented to the hybrid arrangement set forth above,"any further colloquy or conversation regarding the dangers of self-representation" was unnecessary. Dist. Ct. Op. at 12. However, as noted above, inasmuch as Buhl was attempting to represent himself, not obtain substitute counsel, the trial court improperly dispensed with the second Welty inquiry, and this pr ecludes a finding that Buhl waived his Sixth Amendment right to counsel.

We realize, of course, that the r ecord establishes that Buhl had represented himself befor e. In addition, Buhl was clearly "street-smart," and had some technical legal knowledge. He filed numerous motions, and even attempted to cite case law to the trial court; though he was obviously confused about the name of the case that he wanted the trial court to consider. See App. at 67.19 However, in Welty, we noted that street smarts and prior pr o se representation were no substitute for a careful and thor ough inquiry. "[W]e could not extrapolate from Welty's participation or self-representation in other cases that he made a knowing and intelligent waiver of counsel in this case." 674 F.2d at 191. We cited United States v. Harrison, 451 F.2d 1013 (2d Cir. 1971) (per curiam), wherein the court held ther e was

_____

19. Buhl told the trial court that he wanted to r epresent himself "[u]nder
State versus California."

insufficient inquiry to establish a valid waiver of counsel even though the defendant "was an attorney who professed familiarity with criminal law." Id.

After Buhl realized that he was not going to be allowed to conduct his own defense he refused to participate in the trial, and absented himself from the pr oceedings. Defense counsel conducted Buhl's defense in Buhl's absence. The State now argues that, in assenting to the hybrid representation and/or refusing to be present during his own trial, Buhl waived his Sixth Amendment right to self-representation. See Brown v. W ainwright, 665 F.2d 607 (5th Cir. 1982) (en banc) (finding defendant waived right when he failed to renew previous request to represent himself until third day of trial and accepted r epresentation by counsel until then). We disagree.

D. Buhl's Purported Waiver of his Right To Self-Representation.

It is well established that a defendant can waive the right of self-representation after asserting it. See Raulerson v. Wainwright, 732 F.2d 803, 809 (11th Cir.) (defendant waived self representation right by pr oceeding with assigned counsel and walking out of Faretta hearing), cert. denied, 469 U.S. 966 (1984); Wilson v. Walker, 204 F.3d 33, 38 (2d Cir. 2000) (holding that petitioner abandoned initial request where he subsequently had two dif ferent lawyers appointed and did not assert right again after question of self-representation had been left open for further discussion); cf. Williams, 44 F .3d at 101-102 (defendant did not waive right to proceed pro se  by acquiescing in court's denial of request); Lorick, 753 F .2d at 1299 (reversing conviction where, even if pro se defendant had waived his right in pre-trial proceedings by soliciting standby counsel participation, defendant successfully renewed his request at the opening of trial proceedings); United States v. Baker, 84 F.3d 1263, 1267 (10th Cir. 1996) (r equest for advisory counsel did not cause defendant to waive right to r epresent himself).

The New Jersey Appellate Division and the district court agreed that Buhl compromised his right to conduct his own

26

defense by vacillating "between assigned counsel and self-representation." Appellees' Br. at 28. Our dissenting colleague agrees. See Dissent at 40-41. The State argues that although Buhl "originally indicated he wanted to proceed pro se, he later agr eed with the court that he was merely unhappy with his attorney's attention to the case." The State thus insists that Buhl "consented to maintaining counsel's assistance." Id. at 32. The State characterizes Buhl's purported assent to the judge's proposed remedy as vacillation. The district court concluded that "[p]etitioner expressly consented to this hybrid form of representation, even expressing satisfaction." Dist. Ct. Op. at 9. The court determined that Buhl agreed to the arrangement based upon the following exchange between Buhl and the trial court:

> THE COURT: . . . [m]y feeling is to allow you to put on the record what you say represents incompetency of counsel, put it all on.
>
> My inclination also is to say to you is during the course of this trial if you feel that your lawyer should be doing something that he is not doing, right?
>
> BUHL: Yes, sir.
>
> THE COURT: Like call a witness or cross-examine in a different way or produce a document or something like that, is to stop at that point or at some point wher e it's convenient, get rid of the jury and tell me what you want to say and put it all on the recor d. Do you understand?
>
> BUHL: Yes.
>
> THE COURT: We can do that during the beginning of the trial so everything that happened in the past you can lay out and make a record of it . . . before we start the trial. And if anything comes up during the trial, get a message to me through your attorney. Say look I want to talk to you.

App. at 15. Therefore Buhl's purported "consent" is based upon nothing more than Buhl's affirming that he understood what the court was allowing him to do. Buhl

27

neither requested this compromise nor withdrew his motion to proceed pro se because of it.

The State cites United States v. Bennett, 539 F.2d 45 (10th Cir. 1976), to support its assertion that Buhl vacillated to the point of waiver. In Bennett, defendant was convicted on one count of an indictment, but the jury was unable to agree on the remaining counts, and a mistrial was declared as to those counts. Prior to the r etrial, the defendant had asked "to assist in his own defense," by cross-examining certain witnesses and delivering the opening and closing address to the jury. The district court granted the request to the extent of per mitting the defendant to cross-examine particular witnesses. However, thereafter, the defendant asked to pr oceed pro se, and conduct his own defense in its entirety. The trial judge granted the motion, and informed the defendant that standby counsel would be appointed in the event that defendant's conduct necessitated defendant's r emoval from the courtroom. Id. at 50. At a subsequent pre-trial hearing, defendant renewed his request to "assist" counsel at his trial rather than conduct his own defense because he realized he was not qualified to proceed pro se. The judge reappointed counsel, and granted defendant's motion to assist to the extent of conducting cross-examination. However, the defendant then again asked to r epresent himself. The court denied the motion, and appointed new counsel. The defendant was convicted following a trial at which he was represented by counsel and he appealed, arguing, inter alia, that his right to self-representation had been denied. The Court of Appeals held that the trial court had not denied the defendant's motion to repr esent himself because the defendant had not taken a "clear and unequivocal position on self-representation." Rather, the court held that the defendant "forfeited his right to self-representation by his vacillating positions which continued until just six days before the case was set for trial." Id. at 51.

Buhl's situation is quite different. Buhl acquiesced to counsel's role during the course of a hearing in which the trial court affirmed its inclination to deny Buhl's motion to proceed pro se on at least six different occasions. See App.

28

at 15, ll.2-4; App. at 18, ll.15-17; App. at 19, ll.3-5; App. at 24, ll.6-11; App. at 26, ll.21-24; App. at 37, ll.8-10. The judge told Buhl that he could not appoint another defense attorney, App. at 14, and later said:

> My concern right now is . . . proceeding with this trial rather than proceeding pro se. My inclination, and the nature of the charges themselves (sic ) also the kind of case we're dealing with here is not to allow Mr. Buhl to proceed pro se [,] but to give him the right to put what he wants to put on the record and lay it all out. I say you can make motions [pro se].

App. at 24. Thus, Buhl had no choice but to pr oceed as the court suggested.

> THE COURT: That's the best I can do you, the answer is not to go pro se. The answer is to communicate what you want to me and put it on the record and make a complete record for yourself and that's the best I can do for you.

Id. at 26 (emphasis added).

The court clearly refused to allow Buhl to conduct his own defense without the participation of counsel, and Buhl acknowledged the procedure the court was going to allow, but he then refused to participate in the trial. Webster's Dictionary defines "vacillate" as: "1. to sway unsteadily. 2. to shift back and forth between two courses of action." Webster's Desk Dictionary of the English Language, 989 (1990 ed.). Buhl's response to the proposed hybrid procedure is more accurately described as "submission" than "vacillation" or "consent". Under these circumstances, we can not conclude that Buhl waived his right to conduct his own defense, or that he implicitly withdr ew his prior request to do so.[20] The trial judge parried Buhl's attempt to proceed pro se, and counter ed by allowing Buhl the "choice"

_____

20. See United States v. Goldberg, 67 F.3d 1092 (3d Cir. 1995) (clarifying the concepts of waiver, forfeitur e and waiver by conduct in a case where we considered whether a defendant had waived his right to counsel by his abusive conduct). Notably, the right of self r epresentation may be waived more easily than the right to counsel. See Dorman, 798 F.2d at 1367.

of full representation by defense counsel, or a hybrid representation. Given Buhl's timely r equest to conduct his own defense, that was not a choice that we can allow. See also Williams, 44 F.3d at 101–102 (holding that a defendant's "desire to exchange one mandatory counsel for another . . . does not signify that he was abandoning his Sixth Amendment right to have none").

Although a hybrid process such as the trial court suggested may mitigate some of the effects of forcing an attorney upon a defendant who has properly asserted the right of self-representation, the pr ocedure the court outlined is inconsistent with the core of the constitutional right that Buhl was attempting to assert.

> [T]he pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the Faretta right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the Faretta right is eroded.

> Second, participation by standby counsel without the defendant's consent should not be allowed to destr oy the jury's perception that the defendant is r epresenting himself. The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear pr o se exists to affirm the accused's individual dignity and autonomy.

McKaskle v. Wiggins, 465 U.S. at 178 (footnote omitted). See also Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989).

In Orazio, the trial court denied a motion to proceed pro se and defendant proceeded to trial r epresented by appointed counsel. The Court of Appeals found that the defendant's right of self-representation had been denied even though the defendant did not renew his r equest to waive counsel after counsel was appointed and the trial began. The court concluded:

> Petitioner's request to represent himself was denied. By failing to repeat his desire to repr esent himself,

petitioner did not vacillate on the issue. He did not abandon his initial request, either. Brown v. Wainwright, 665 F.2d 607, 611 (5th Cir. 1982). Orazio is unlike the petitioner in Brown, who, before the court even denied his motion for self-representation, asked counsel to represent him. Orazio acquiesced in being represented by counsel because his r equest to defend himself had already been denied. T o avoid a waiver of a previously-invoked right to self-repr esentation, a defendant is not required continually to r enew a request once it is conclusively denied or to make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal. Moreover, in Brown, defense counsel represented to the court that he and defendant had resolved their differences. Here, the court's finding of a subsequent waiver by defendant is unsupported by such conduct and statements of the defendant and counsel.

Id. at 1512 (emphasis added) (internal citations and quotations omitted). See also Lorick, 753 F .2d at 1299 (where trial judge failed to recognize right of self representation at the outset, defendant's "subsequent apparent acquiescence can only in fairness be taken as a concession of his inability successfully to act on the right asserted").

Here, the trial court denied Buhl's motion to proceed pro se in no uncertain terms. The court then offered the aforementioned hybrid procedure which afforded Buhl the right to file motions and object to his attor ney's actions, but did not permit Buhl to conduct his own defense in front of the jury. Buhl did not formally object to the court's suggestion, but his conduct is a far cry from vacillation or waiver. See Orazio, supra. As the Court of Appeals for the Eleventh Circuit has so aptly noted, the right of self-representation "would be a weak right indeed" if a defendant needed to "risk sanctions by the court to [uphold it.]." Dorman, 798 F.2d at 1367. Accordingly, we hold that Buhl did not waive or abandon his Sixth Amendment right of self-representation by "consenting" to the court's suggestion. The hybrid procedure the court afforded Buhl deprived him of the core of his "Far etta rights." It is

31

irrelevant that "Buhl made of recor d several concerns, challenged the indictment . . . , and stated he was unhappy with his appointed counsel." Dissent at 41. His ability to make such statements, put his objections on the r ecord, and make motions out of the jury's hearing was not consistent with preserving "the jury's per ception that [he was] representing himself," and it is that perception that is at the "core" of the right of self-r epresentation. McKaskle, 465 U.S. at 178 (1984).

Moreover, Buhl did not actually consent to the court's suggestion at all. Rather, he refused to cooperate with counsel or even be present during trial. It is ironic that his refusal to cooperate with the hybrid pr ocedure that the court afforded him is now viewed as also constituting a waiver of his right to represent himself.

E. Buhl's Absence From the Trial is not a Waiver.

After the trial court denied several of Buhl's pro se motions and required him to proceed with counsel, Buhl told the judge that he did not want to sit thr ough his trial. The judge then carefully inquired to make certain that the decision was voluntary, he explained the possible consequences of Buhl's absence, and made arrangements for Buhl to return to the trial if he changed his mind. The judge also explained the seriousness of the char ges and asked Buhl if he understood. Buhl responded as follows:

> I am not a dope, I realize I am going to be convicted because I haven't be[en] able to to (sic ) prepare any kind of defense.
>
> * * *
>
> I am not here to play bad man. I am telling you how I feel about the situation. Any kind of recourse or action I am going to get, it will be on the Appellate level, not from this Court. I don't see that I should be here for it. I waive my right to be her e for it. I rely on the double jeopardy issues that I had just pr esented and my previous ones and rights that I can continue as my own attorney.

32

App. at 76-7. Thus, rather than relinquishing his right to self-representation by absenting himself from trial, Buhl was actually asserting his displeasure with his inability to conduct his own defense. We certainly do not condone Buhl's response to the trial court. However, our analysis is not controlled by the wisdom or propriety of Buhl's decision, nor by the manner in which he expr essed it. Rather, we must inquire into whether his conduct was so inconsistent with the right of self-repr esentation as to result in a waiver of it. Clearly it was not. Rather, it was an example of the very concern the Supreme Court expressed in Faretta when discussing the importance of honoring a defendant's properly asserted right to pr oceed pro se. The Supreme Court stated: "To force a lawyer on a defendant can only lead him to believe that the law contrives against him." Faretta, 422 U.S. at 834.

The dissent relies upon McKaskle along with several other cases in arguing that Buhl's conduct amounts to vacillation and waiver of his 6th Amendment right of self-representation. See Dissent at 40. However, a careful examination of each of those cases reveals that they are distinguishable, and to the extent that they apply to our inquiry at all, they support the conclusion that Buhl's rights were denied.

In McKaskle, the defendant was allowed to pr oceed pro se, but standby counsel was appointed to assist. Both before and during the trial, the defendant changed his mind; sometimes objecting to counsel's participation, and sometimes agreeing to it. Following his conviction he argued that counsel's participation had unfairly interfered with his ability to conduct his own defense. The Supreme Court disgreed. It is important to note, however, that in McKaskle, the defendant had filed a written r equest for appointment of counsel in which he had rescinded an earlier motion to waive counsel and proceed pro se. Thereafter, the defendant filed thr ee additional motions for appointment of counsel. However, when pr etrial proceedings began, the defendant "announced that he would be defending himself pro se." Id . at 172. The trial judge allowed him to do so, however, the defendant thereafter interrupted his own presentation of his defense

33

to consult with "standby" counsel during trial. The Court concluded that the defendant had been affor ded all of the rights he was entitled to under Faretta, and that the issue was not the limits placed upon his participation in the trial at all, "for there clearly were none[ ]." Rather the defendant was really complaining about limits placed upon"standby counsel's participation." Id. at 174. Those limits were perfectly proper because the Far etta right is the defendant's, not counsel's. "Accordingly, the Faretta right must impose some limits on the extent of standby counsel's unsolicited participation." Id. However , the instant appeal does not implicate the role of "standby counsel." Here, defense counsel was not acting in a "standby" role, he was charged with conducting the defense, though Buhl was allowed to make objections on the recor d, out of the jury's presence. The Court in McKaskle stated:

> [t]he pro se defendant must be allowed to control the organization and content of his own defense, to make objections, to argue points of law, to participate in voir dire, to question witnesses, and to addr ess the court and the jury at appropriate points in the trial. The record reveals that [the defendant] was in fact accorded these rights.

465 U.S. at 174. That is clearly not our case.

In Raulerson v. Wainwright,21 the defendant initially requested to act as co-counsel during a status hearing prior to sentencing, but the trial court denied that r equest. The defendant then sent a letter asking to be allowed to proceed pro se, but the court "did not immediately act on this second request." 732 F.2d at 808. At the ensuing resentencing hearing the court reconsider ed its prior ruling and allowed the defendant to act as co-counsel based upon a recent decision of a state appellate court upholding such hybrid representation. "During the course of the hearing," id., the Florida Supreme Court reversed that decision, and the trial court reacted by withdrawing its grant of hybrid representation. "At this removal of co-counsel, [the defendant] did not immediately renew his r equest to appear pro se." Id. Thereafter, he requested permission to proceed

_____

21. See dissent at 2.

pro se, and the trial court responded by initiating a Faretta inquiry. However, the trial court "subsequently terminated the hearing when [the defendant] abruptly walked out of the courtroom." Id. On appeal, the defendant argued, inter alia, that his constitutional right to self-representation had been denied. The Court of Appeals rejected that argument and ruled that the defendant's decision to walk out in the middle of the required Faretta inquiry constituted a waiver of that right. Thus, Raulerson would only be helpful to our analysis if Buhl's departure had prevented the trial court from undertaking the required Faretta inquiry. A departure under those circumstances may well have resulted in a waiver of his Faretta rights. Of course, that is not what happened because no Faretta inquiry was ever attempted here.

In Brown v. Wainwright, 665 F.2d 607 (5th Cir. 1982), as the dissent concedes, Dissent at 40, the defendant requested permission to conduct his own defense at trial based upon his discontent with his attorney's efforts and/or ability. A hearing was held on that motion, but the court deferred ruling on the motion and instead, in defendant's presence, asked defense counsel to see if defendant's differences with his representation could be "worked out." Id. at 609. Thereafter, "[e]ither at the hearing or at some later point, counsel informed the court that he and defendant had resolved their differences. He also stated that defendant informed him he had changed his mind and wanted counsel to continue his representation." Id. On appeal, the defendant conceded that he "told counsel to `stay on,' " though he argued he did so only after his request to proceed pro se was denied. Id. at 609. In any event, he did not renew his request to proceed pro se until the third day of trial, after the close of the evidence. The Court of Appeals held that defendant had waived his right to represent himself by his conduct. "Defendant concedes that at some point after the hearing on the motion to withdraw he asked counsel to continue his representation." Id. at 611 (emphasis added). The court added that "the finding of waiver is also supported by counsel's statement to the court that he and defendant had worked out their differences." Id.

35

Thus, it is not the analysis in Brown, but the court's subsequent discussion of Brown in Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989), that is most analogous to our inquiry. As noted above, the court in Orazio was careful to distinguish Brown, and the dissent's position as to waiver is inconsistent with Orazio. Moreover , the court in Brown was careful to limit and explain its holding, and the court's explanation of the scope of its ruling under mines the dissent's reliance on Brown. The court stated:

> Our decision here should not be read to imply that a trial court may unduly defer a ruling on a fir m request by defendant to represent himself in the hopes that the defendant may change his mind. . . . Neither should it be read to indicate that a defendant, to avoid waiver, must continually renew his request to represent himself even after it is conclusively denied by the trial court. After a clear denial of the request, a defendant need not make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal.

Brown, 665 F.2d at 612 (emphasis added).

The dissent's reliance on United States v. Bennett, 539 F.2d 45 (10th Cir. 1976) is also unpersuasive. As noted above, there, as in McKaskle, a defendant insisted upon acting as co-counsel and then continually vacillated between allowing defense counsel to conduct his defense, and participating with co-counsel in the kind of hybrid defense that a defendant clearly is not entitled to under the Constitution.22 Buhl never sought to act as co-counsel, and he never requested substitute counsel. He sought only to act as his own counsel, and his decision to abruptly leave the proceedings did not, in any way, under mine his effort to represent himself. In fact, he waived his presence at trial because he was unable to represent himself.

We do not disagree with the dissent's assertion that Buhl faced " `overwhelming' evidence," dissent at 41, or with the

---

22. See McKaskle, 465 U.S. at 182 ("Faretta does not require a trial judge to permit `hybrid' representation of the type [the defendant] was actually allowed.").

New Jersey Appellate Division's conclusion that the record "shriek[ed] of [Buhl's] guilt." State v. Buhl, 635 A.2d at 565. That, of course, is not the issue. Our analysis her e is driven by the legal principles that arise from Far etta. We are not called upon to assess the quality or quantity of the evidence.

> Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.

McKaskle, 465 U.S. at 177 (emphasis added). By the same token, we are not oblivious to the force of the evidence against Buhl, nor the cruelty and wantonness it establishes. However, as judges we must simply determine whether his right to conduct his own defense was"either respected or denied," and we hold that it was denied. That denial was not merely a "trial error;" rather, it was a "structural defect [that] affect[ed] the framework within which the trial proceed[ed]." Arizona v. Fulminante, 499 U.S. 279, 309-310 (1991). "The existence of such defects . . . requires automatic reversal of the conviction because they infect the entire trial process." Brecht v. Abrahamson, 507 U.S. 619, 629-630 (1993) (employing the categorization used previously by the Court in Arizona v. Fulminante, contrasting "trial errors" with "structural defects in the constitution of the trial analysis").

> If a defendant seeks to represent himself and the court . . . denies his . . . request[ ], the government is not entitled to an affirmance of the conviction it subsequently obtains. To the contrary, the defendant is entitled to reversal and an opportunity to make an informed and knowing choice.

Hernandez, 203 F.3d at 625.

F. CONCLUSION.

Therefore, for the reasons set forth herein, we hold that Buhl's Sixth Amendment rights were not adequately

protected. Before concluding, however , we pause to comment upon the trial judge's stewardship of Buhl's trial. Despite our holding, it is evident that the trial judge here was attempting to be scrupulously fair, and that he did his best to afford Buhl a fair trial despite the horrendous nature of the crimes Buhl was charged with, and the weight of the evidence of his guilt. As noted above, the crimes Buhl was accused of were as vicious as they wer e dastardly. Yet, the trial court even relaxed the formal rules of procedure to insure that Buhl could bring his objections to the trial court's attention.23 We do not intend our analysis to in any way detract from the noteworthy efforts of the trial judge to protect Buhl's constitutional rights or to uphold the dignity of Buhl's victim, and afford her some measure of closure by expeditiously bringing this matter to trial.

Nevertheless, for the reasons set forth above, we can not affirm the district court's denial of Buhl'sS 2254 petition without ignoring the teachings of Faretta  and its progeny. We must, therefore, vacate the district court's denial of the writ of habeas corpus and remand with instructions that the district court issue a writ of habeas corpus r eleasing Buhl from custody on these charges24 conditioned upon Buhl being retried within 120 days of the date of the district court's order.25

_____

23. The court told the defendant:

> I don't care whether you send a motion in. Y ou know sometimes . . . 

> pro se motions are . . . filed with the Clerk's office and what happens it's stamped non-conforming. . . .

> * * *

> Put this big stamp on it because you did not supply an order, cross every T and dot every I. I'm not interested in that. I'll handle the 

> filing of motions. I don't care whether it's conforming or not and I 

> can do that.

App. at 25.

24. As noted above, any such release, if or dered, will not affect Buhl's custody as he must still serve the sentences of life imprisonment as noted above. See supra at n.1.

25. If the State elects to retry Buhl on the charges underlying the convictions in this case despite his remaining sentence of life

SCIRICA, Circuit Judge, dissenting.

I would affirm the denial of Buhl's habeas petition. The record demonstrates Buhl did not clearly or unequivocally waive his right to counsel and invoke his right to self-representation. Buhl mooted his self-r epresentation request by accepting the trial court's hybrid repr esentation proposal, and thereafter waived any right to self-representation by refusing to attend and participate in his trial.

Buhl twice raised the possibility of self-repr esentation. Shortly before trial, Buhl filed a written motion to dismiss his attorney and represent himself, on which the trial court held a hearing. The trial court's conclusion that Buhl's request was motivated by his dissatisfaction with his appointed attorney was no more than a confirmation of what Buhl repeatedly told the court, both in the affidavit he filed in support of his motion1 and throughout the hearing. At the hearing, the court confirmed the basis for the motion by asking Buhl, "Essentially, what your [sic] saying is incompetency of counsel, am I right?" Buhl answer ed, "Yes, your Honor." (Tr. of 1/22/91 hearing at 4.) Buhl's answer was clear and unequivocal.2 Based on that clear answer, and on the court's ensuing detailed discussion with Buhl, I agree with the New Jersey Appellate court (as did the District Court) that "it became apparent almost at the outset that [Buhl's] principal complaint pertained to his attorney's alleged incompetence." State v. Buhl, 635 A.2d at

_____

imprisonment, Buhl must once again affirmatively request to proceed pro se if he still wishes to do so. Following any such a request, the court must conduct an appropriate inquiry under Faretta as detailed in Welty. Absent a request to proceed pro se Buhl will be entitled to representation of counsel at any retrial.

1. In his affidavit, Buhl "expressed dissatisfaction with his lawyer's work
and claimed the lawyer was incompetent." State v. Buhl, 635 A.2d 562, 570 (N.J. Sup. Ct. App. Div. 1994).

2. The majority concludes that Buhl's answer was not a sufficient basis for the trial court's actions, reasoning that"nearly every request to proceed pro se will be based upon a defendant's dissatisfaction with counsel." I disagree; some requests may be merely attempts to delay trial. I see no reason to question the sufficiency of Buhl's answer.

39

570. Buhl continually justified his motion with complaints about how his appointed counsel was handling the case. Buhl never indicated he still would want to r epresent himself if he were satisfied with counsel.

Having confirmed the basis for Buhl's motion, the trial court proposed a remedy: a hybrid for m of representation in which appointed counsel would continue to r epresent Buhl, but Buhl would be allowed to make his own motions and to put on record any disagreements with his appointed counsel's handling of the case. Buhl stated that he understood the proposal, and he immediately consented to it by spending the remainder of the hearing discussing pre-trial issues with the court and his appointed counsel. Buhl's willing acceptance of the hybrid repr esentation (which the majority characterizes as "submission") was tantamount to a withdrawal of the self-repr esentation request. See McKaskle v. Wiggins, 465 U.S. 168, 182 (1984) ("Even when he insists that he is not waiving his Faretta rights, a pro se defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that counsel interfered unacceptably;" stand-by counsel's participation did not violate defendant's right to proceed pr o se); Raulerson v. Wainwright, 732 F.2d 803, 809 (11th Cir. 1984) (defendant waived his self-representation when he voluntarily walked out of his Faretta hearing); Brown v. Wainwright, 665 F.2d 607 (5th Cir. 1982) (en banc) (defendant waived his self-representation request when, after hearing on pro se motion, he asked counsel to "stay on," counsel informed court he and defendant resolved their dif ferences, and defendant did not renew self-representation request until after close of evidence); United States v. Bennett, 539 F.2d 45 (10th Cir. 1976) (defendant forfeited right to self-representation by vacillating on r epresentation issue until six days before trial). Buhl's ability to make and file pro se motions and to make of record any objections and arguments make the situation materially dif ferent from that in Faretta, where the defendant was specifically precluded from filing pro se motions and acting as co-counsel along with appointed counsel. See Faretta v. California, 422 U.S. 806, 808 (1975).

40

The majority also holds the trial court failed to conduct a proper Faretta inquiry. But in or der to invoke his right to self-representation and trigger the need for a full Faretta inquiry, Buhl was required to make a clear and unequivocal request to proceed pro se. Far etta, 422 U.S. at 835 (defendant must "clearly and unequivocally" indicate intention to proceed pro se). Buhl's r equest was not clear and unequivocal, because he willingly accepted the hybrid representation proposal (or at the very least, vacillated in his request to proceed pro se). Accor dingly, the trial court was not obligated to conduct any further inquiry.

The majority suggests that Buhl's acceptance of the hybrid representation proposal should not be interpreted as a withdrawal of the self-representation r equest because Buhl would have "risked sanctions" by doing otherwise. Nowhere does the record indicate the trial court considered or threatened sanctions if Buhl rejected the proposal. Moreover, I see nothing in the r ecord indicating the trial court coerced Buhl into accepting the pr oposed hybrid representation. At least six times during the hearing, the trial court specifically asked Buhl whether he understood the proposed resolution. Each time, Buhl r esponded he did. The record portrays a legally sophisticated defendant familiar with and acting to manipulate the pr ocess because, as noted by the New Jersey appellate court, he faced "overwhelming" evidence against him and a r ecord that "shriek[ed] of [his] guilt." State v. Buhl, 635 A.2d 562, 565 (N.J. Sup. Ct. App. Div. 1994).

The circumstances of Buhl's second request to proceed pro se confirm Buhl suffer ed no constitutional violation (and distinguish this case from those on which the majority relies). On the day of trial, consistent with the hybrid representation arrangement, Buhl made of r ecord several concerns,3 challenged the indictment on the ground that it had been improperly amended, and stated he was unhappy with his appointed counsel and wished to repr esent himself at trial.4 The court denied Buhl's request to proceed pro se.

_____

3. For example, Buhl claimed he was never given a warrant and never formally charged. He also discussed witness issues with the court.

4. I disagree that Buhl's second self-r epresentation request was timely. Buhl's morning-of-trial request came after he had already been granted

41

Buhl then made (through appointed counsel) a r ecusal motion. That motion also was denied. The jury then was impaneled, after which Buhl, pro se, again moved to dismiss the indictment on double jeopardy gr ounds, moved for mistrial on the ground of juror pr ejudice, and objected to the presence of uniformed corr ectional officers in the courtroom. The court noted all of Buhl's objections, but indicated the trial would proceed. At that point Buhl stated he did not wish to be present during the trial. The court advised Buhl of his right to be present for the trial, warned of the implications of Buhl's refusal to be pr esent, and confirmed that Buhl's decision was voluntary. Buhl responded, "Any kind of recourse or action I am going to get, it will be on the Appellate level, not fr om this Court. I don't see that I should be here for it. I waive my right to be here for it."

Rather than a mere "assertion of displeasur e," Buhl's words and actions constituted a waiver. Buhl's waiver –– and the opportunities provided to him to make motions, arguments, and objections of recor d –– compels the conclusion that he was not deprived of his constitutional right to appear pro se. See Raulerson v. W ainwright, 732 F.2d 803, 809 (11th Cir. 1984) (self-r epresentation request

_____

one trial continuance to allow him to continue to pr epare for trial. As both the New Jersey Appellate court and the district court concluded, granting Buhl's second request on the mor ning of trial would have unduly delayed the trial. See Dist. Ct. Op. at 13; State v. Buhl, 635 A.2d at 571–72. That Buhl's last-minute self-repr esentation request came after an earlier request with resulting one-month continuance and permission to file pro se motions, and on the heels of several denied dismissal motions, strongly suggests Buhl's r equest was intended merely for delay. Thus, Buhl's situation differs fr om those in Virgin Islands v. Charles, 72 F3d 401 (3d Cir. 1995) and Virgin Islands v. James, 934 F.2d 468 (3d Cir. 1991), in which morning-of-trial pro se requests were allowed. Those cases did not specifically addr ess the timeliness issue, did not appear to have involved trials that had alr eady been continued, and do not reflect determinations by the trial courts that granting the last-minute requests would have substantially delayed the trials. Moreover, there is no basis for the majority's view that Buhl's second request can somehow "relate back" to his first request for purposes of determining timeliness.

42

waived when defendant walked out of courtroom in the midst of a Faretta hearing; "The defendant's behavior on this occasion convinces us that he was not deprived of his constitutional right to appear pro se.").

For these reasons, I respectfully dissent.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit