**UNITED STATES of America,**

**v.**

*****Patricia Colleen MCGRATH, f/k/a Richard Patrick McGrath, Appellant *****(Amended in accordance with Clerk's Order dated 01/06/03).**

**No. 01–2222.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 3, 2003.

Decided Oct. 21, 2003.

Thomas M. Zaleski, Office of United States Attorney, Philadelphia, PA, for Appellee.

Elizabeth T. Hey, Defender Association of Philadelphia, Philadelphia, PA, for Appellant.

Before SLOVITER, NYGAARD, and ROTH, Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Patricia McGrath, formerly known as Richard Patrick McGrath,[1] was convicted

---

1. McGrath was originally indicted under the name of Richard Patrick McGrath, but by agreement of both parties, the indictment was redacted to read "Patricia McGrath, formerly known as Richard Patrick McGrath." The government refers to McGrath as a male,

of two counts of armed bank robbery in violation of 18 U.S.C. § 2113(d), and five counts of using, carrying, brandishing, or discharging a firearm during commission of a violent crime in violation of 18 U.S.C. § 924(c). She was sentenced to 428 months in prison, to be followed by five years of supervised release, and ordered to pay $15,670 in restitution. She filed timely notice of appeal.

McGrath challenges the District Court's handling of her pre-trial comments concerning self-representation, charging that the Court violated her rights under the Sixth Amendment and the guidelines established by the Supreme Court in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Alleging that these errors are structural, McGrath requests a new trial. Because the District Court appropriately handled McGrath's requests, we will affirm the conviction.

## I. FACTS

McGrath describes herself as a "68-year-old transgendered woman who was presumed male when born." Brief for Appellant at 3. She was charged with committing two bank robberies at the First Federal Savings and Loan Association of Bucks County, in Bensalem, Pennsylvania. In part because witnesses described the bank robber as a man, the issue of the defendant's gender identification became significant. Indeed, this issue pervaded the trial, as well as the pre-trial and post-trial proceedings, and formed the crux of

McGrath's dissatisfaction with her attorney.

McGrath focuses on two instances in which she claims to have made requests to proceed *pro se*, both of which occurred before trial. Although the District Court denied a request by McGrath to represent herself made after the fourth day of trial, McGrath does not appeal the denial of that request.[2]

McGrath's first mention of a desire to represent herself came in a handwritten letter delivered to the Court on February 14, 2000, the day jury selection was to commence. The letter is a 16–page discussion[3] of various issues that were troubling the defendant, most related in some way to her gender identity. *See* App. at 81a–94a. McGrath's letter begins by referring to a disagreement with her attorney as to whether she should testify about her gender, and explains that the possibility of being referred to in court as "Richard" causes her such "extreme mental distress" that she would rather be excused from the trial. *Id.* at 81a. The letter concludes by outlining some of McGrath's problems with her attorney, including a difficulty in communicating and the failure to discuss witnesses. Referring to the defense attorney, the letter asserts:

> [S]he seems to much in agreement with prosecutor Zelenski and the court regarding my guilt. I have brought this up with her over the last 2 month but she avoids the obvious. She also dis-

while McGrath refers to herself as a female. Without commenting either way on the issue of McGrath's sexual identity, which is not germane to our decision, we will respect McGrath's preference and use female pronouns.

**2.** McGrath indicates that the first and second requests, made before trial, are the focus of her appeal. Appellant's Br. at 10. However, she argues in a footnote that the denial of the

request made during trial was also inappropriate. Appellant's Br. at 52 n. 14. We do not address this argument, as it was raised only in the footnote on the last pages of the brief. *See, e.g., Marshall v. Hendricks*, 307 F.3d 36, 64 (3d Cir.2002) (casual reference to an issue is insufficient to preserve it for consideration).

**3.** The core of the letter is 14 pages, but McGrath also included two pages of endnotes.

agrees with my wanting to take the stand and has not prepared a list of witness's I want called in my defence. At this point I would rather go "Pro Se" or I could accept a co-council arrangement that would allow me to ask those question I consider to be vital to my defence. I remind the court that I have a 168 I.Q. and I have been found compitent by two court appointed psychiatrist who also stated that I was "highly intelligent," and "brilliant." App. at 93a–94a (errors in original).

In response to this letter, the District Court conducted an *ex parte* hearing, during which McGrath made the second mention of proceeding *pro se*. *See* App. at 115a–140(a). Following a lengthy discussion of gender identity issues, the District Court inquired about the letter and McGrath again mentioned the difficulties in communicating with her attorney and the disputes with her attorney about witnesses. She continued:

> [W]hat I'm saying is I'd rather take over the trying of the case with advice of an attorney or go co-counsel because in case she questions a witness and she doesn't bring up the questions that I would want asked, I would want for my own defense and my own satisfaction to do that.... [I]f I lose it should be because of my flaws or my fault, not somebody else's. App. at 125a.

The District Court responded that it did not believe it would be wise for the defendant to represent herself and told McGrath that it would not approve a "co-counsel" arrangement. In an attempt to resolve McGrath's concerns, the Court offered to delay trial by a day to provide her with more time to speak to her attorney, and advised her that she had the right to communicate with her attorney during trial about the questioning of witnesses. The Court further stated:

Now if you tell me you don't want to use Ms. Dixon as your lawyer I'll have to colloquy you and you will then end up— we could have Ms. Dixon as standby counsel sitting either with you at counsel table or right behind you and let you conduct your own defense, but I don't recommend that at all.... My concern ... is that you're all consumed with the intersexuality issue and not with who robbed the bank ... This is not a trial of your intersexuality. This jury is not going to decide whether you're a man or a woman. App. at 132a.

After further discussion, McGrath agreed that it would be beneficial to have more time to speak to her attorney, and accepted the Court's offer to delay jury selection to the following day. *See* App. at 134a–135a. McGrath told the Court she was willing to talk with her lawyer to see if they could work things out before making the decision whether she wanted to proceed *pro se*, acknowledging the adage that "a lawyer that defends himself has a fool for a client." App. at 138a.

When court opened the following day, the District Court began by asking McGrath several times if the additional time to confer had led her to be satisfied with continued representation by her attorney, coming back to the issue repeatedly after McGrath diverted the discussion to other topics. *See* App. at 143a. After still failing to get a yes or no answer, the Court proposed another *ex parte* hearing in order to conduct a colloquy on the subject of self-representation. Before doing so, the Court asked one more time if McGrath wished to represent herself, to which she replied: "No, I'd rather not, Your Honor." App. at 152a. The Court answered: "Well, I guess that ends the colloquy. I think that's a wise choice." *Id.*

Trial thus commenced with McGrath represented by counsel. Following the

fourth day of trial, McGrath wrote another letter to the Court, claiming her attorney had "sabotaged" her defense, and indicating that the only "chance" she had left was to proceed *pro se,* or preferably, act as co-counsel. App. at 155a–160a. The Court declined this request, reasoning that at that point in the proceedings it would not serve the interests of justice to permit McGrath to represent herself, but nevertheless granting McGrath permission to testify in narrative form. App. at 215a.

## II. DISCUSSION

The District Court had subject-matter jurisdiction of the case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction to review the order of judgment as a final order under 28 U.S.C. § 1291. We exercise plenary review over the District Court's legal conclusions with respect to a request to act *pro se. See Buhl v. Cooksey,* 233 F.3d 783, 789 (3d Cir.2000).

The Sixth Amendment right to counsel has been held to encompass a concomitant right for a defendant to refuse counsel and act *pro se. See Faretta v. California,* 422 U.S. 806, 820–21, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In evaluating the District Court's treatment of a defendant's request to act *pro se,* this Court uses a two-step analysis. We must first determine whether the defendant properly asserted the right. *See United States v. Peppers,* 302 F.3d 120, 132 (3d Cir.2002). In order for the right to be properly asserted, a defendant must make the request "clearly and unequivocally." *Id.* This requirement prevents the waiver of the right to counsel based on "occasional musings on the benefits of self-representation." *Buhl,* 233 F.3d at 792 (internal quotations and citation omitted). If the right of self-representation was properly asserted, only then must we determine if the District Court made an appropriate inquiry under the

dictates of *Faretta.* The analysis in this case does not go beyond the first step.

McGrath asserts that she made a "well-reasoned, articulate, unequivocal request to represent herself." Appellant's Br. at 38. She claims the District Court responded to this clear request by continually indicating that it would be refused, and by "bullying" her into agreeing to work things out with her attorney. *Id.* at 47.

These assertions are simply not supported by the record. The record shows that McGrath constantly wavered on the issue of self-representation, evaded direct questions aimed at clarifying her intent, and was continually sidetracked into irrelevant complaints. The District Court listened to McGrath's complaints about her attorney at great length, and demonstrated great patience in attempting to resolve them to the defendant's satisfaction. Many pages of the transcript are devoted to the District Court's attempts to get McGrath to respond directly to the question of whether she wanted to represent herself, and these attempts eventually resulted in McGrath's statement that she did not wish to act *pro se.*

McGrath's first "request" to represent herself was made in a rambling letter in which she addressed many other topics, asked if she could act *pro se* or have a "co-counsel" arrangement, and requested at the same time that she be excused from the courtroom during the trial. Such a letter cannot be considered an unequivocal request, and the District Court acted appropriately in holding an *ex parte* hearing to explore the meaning of the letter.

During this hearing, the District Court properly expressed its reservations about McGrath, or indeed any defendant, representing herself. *See Peppers,* 302 F.3d at 136 (finding that the expression of such reservations is not only appropriate, but perhaps required in a *Faretta* colloquy).

Despite these reservations, the Court informed McGrath that if she decided she wanted to represent herself, the Court would conduct a colloquy to examine her request. The only request that the Court indicated it would not grant was the suggestion that McGrath act as "co-counsel" with her attorney. The hearing concluded with McGrath agreeing to take more time to speak to her attorney, and a clear statement by the District Court that if she could not work things out, the Court would conduct a *Faretta* colloquy. In her own concluding statements, McGrath made it clear she understood that the option to represent herself was still on the table.

The next day, the District Court engaged in a prolonged effort to get a direct answer to the question of whether or not McGrath still wished to represent herself. McGrath now asserts that her reply of "No, I'd rather not" actually meant that she'd *rather* not, but would if it was the only way to present the defense she wanted to present. Appellant's Br. at 41. Once again, the record belies this assertion. It only reveals that McGrath declined the right to represent herself and then was silent for the rest of the hearing. Far from being an unambiguous request to represent herself, McGrath's reply was an unambiguous indication that she *did not* want to represent herself. Given this reply, the District Court acted properly in declining to conduct further colloquy on the matter.

McGrath's only unambiguous request to represent herself came after the fourth day of trial, and she does not contest the District Court's denial of this request.

## III. CONCLUSION

The record indicates that McGrath never made the "clear and unambiguous" request for self-representation necessary to trigger the requirements of *Faretta.*

Therefore our inquiry need go no farther. For these reasons, we will affirm the judgment of conviction.